(June 1, 1915.)

## D. E. HALL, Appellant, v. WASHINGTON WATER POWER CO., a Corporation, Respondent.

[149 Pac. 507.]

DAMAGES—FLOODING LAND—EVIDENCE—NONSUIT.

1. Where it was alleged that the plaintiff had been damaged by reason of the construction of certain dams in the Spokane river, and it was alleged that the plaintiff's lands were flooded by reason of said dams having raised the water level of Lake Coeur d'Alene and the creek on which his land was located, it was necessary for him to prove that such dams had raised the water level and caused the injury to his land.

2. *Held*, that the evidence was not sufficient to prove that the plaintiff's land was injured by reason of the maintenance of said dams.

3. Where the evidence is not sufficient to support a verdict for the plaintiff, the trial court does not err in granting a motion for a nonsuit and entering judgment of dismissal.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County.   Hon. R. N. Dunn, Judge.

Action to recover damages for flooding plaintiff's land. Judgment for defendant.   *Affirmed.*

R. M. Smith, for Appellant.

"Proof of the violation of any legal right entitles the injured party to some damages.   If no actual damage appear, nominal damages are given for the technical injury.   This rule is applied to all actions whether *ex contractu* or *ex delicto*."   (5 Am. & Eng. Ency. of Law, 1st ed., 4.)

The fact, if it were a fact, that the forces of nature or some other cause not arising from an act of the plaintiff combined with the act of the defendant to produce the injury would not relieve the defendant from liability.   (Sutherland on Pleading, sec. 4353; *Learned v. Castle*, 78 Cal. 454, 18 Pac. 872, 21 Pac. 11; *Axtell v. Northern Pac. Ry. Co.*, 9 Ida. 392, 74 Pac. 1075.)

John P. Gray, for Respondent.

In order to take the case to the jury, there must have been some evidence that the dams of the respondent were responsible in part, at least, for the alleged injury to the appellant's land.   There is no such testimony in the record.   (*Steel Car Forge Co. v. Chec,* 184 Fed. 868, 107 C. C. A. 192; *Richards v. Peter,* 70 Mich. 286, 38 N. W. 278; *Newsome v. Western Union Tel. Co.,* 153 N. C. 153, 69 S. E. 10; *Central of Georgia Ry. Co. v. Dorsey,* 116 Ga. 719, 42 S. E. 1024; *Southern Ry. Co. v. Sittasen,* 166 Ind. 257, 76 N. E. 973; *Atchison T. & S. F. Ry. Co. v. Thomas,* 70 Kan. 409, 78 Pac. 861.)

The burden of proof is upon the appellant to show that the dams of the respondent at least contributed to the alleged injury to his land.   If the lands of the appellant are at such an elevation that they are not and cannot be affected by the dams of the respondent, then the mere fact that some other lands are affected by respondent's dams does not entitle the appellant to recover for fictitious injuries to his land.

SULLIVAN, C. J.—This action was brought to recover damages alleged to have been sustained by the plaintiff, who is appellant here, for the alleged flooding of about 32 acres of his land in the years 1909, 1910 and 1911, alleged to have been caused by the erection and maintenance by the defendant of dams across Spokane river at Post Falls in Kootenai county.

The respondent in its answer admitted the construction of the dams referred to, but denied that the plaintiff's lands had been injured by the erection and maintenance thereof.

Upon the issues made the court tried the case with a jury, and after the plaintiff had introduced his evidence and rested, the respondent moved for a nonsuit and a dismissal of the action upon the ground that the plaintiff had failed to prove a sufficient case to go to the jury.   The court granted said motion and entered judgment of dismissal.   The appeal is from the judgment.

The main issue in the case was whether or not any of the lands of appellant were at such an elevation that the dams of

respondent could in any manner affect them by flooding them. The lands of appellant are situated along a stream which flows into Lake Coeur d'Alene, which stream is subject to spring freshets. Both before and since the construction of said dams the lands of the appellant were subject to annual overflow in the spring time. Some years the flood would come earlier than in other years, and in some years it would last longer than during others. When the floods began late and remained long upon the surface of the ground, the lands flooded produced poor crops, and when the floods came early and went off early, good crops were grown on the flooded lands.

The evidence introduced on behalf of appellant showed that in the year 1909, one of the years when he claimed his lands were greatly injured, he got 98 tons of timothy and red-top hay off the 32 acres of land he claimed was injured. In the succeeding year, 1910, he got only 30 tons, but the next year (1911), he harvested the biggest crop he ever got from said lands. The evidence shows that in the year 1910 there was a flood upon and around Lake Coeur d'Alene that had never been exceeded but once and that was in the year 1894. The high floods of that year evidently were the cause of the poor crop.

There is no evidence in the record, and there was none offered and rejected, to show that at the time of the flood the respondent's gates on its dams were closed or that its dams in anywise affected the elevation of the lake. On the other hand, there is testimony to show that there was a strong current in the Spokane river, showing that the water was freely flowing out of the lake. Adjacent to said lake there are low lands that are affected by said dams, and counsel for appellant undertook to show the flood condition of those low lands situated between the lake and appellant's land since the construction of said dams, and sought to show that his own lands were affected by showing that other lands were affected. The trial court held that the question for determination was not the effect of the construction of said dams upon some other land of different elevation from that of appellant's. It does

not appear from the record that the appellant attempted to show that the dams themselves were responsible for the high-water levels in said lake at the times his land was flooded.

The dams were completed in 1906. There is no evidence to show that the water conditions on appellant's land were different from what they were prior to that year. Certain years there was very high water in that region, and other years not so high, and the evidence shows that that was the condition since the construction of said dams, so far as appellant's land is concerned, and the fact that other lands lower down than plaintiff's were overflowed by reason of the construction of said dams was not evidence that his land was overflowed by reason of their construction.

The trial court evidently took the view that the plaintiff had failed to produce any evidence to show that the dams of defendant were responsible for the floods upon his land, and that plaintiff's own evidence showed that the condition of his land since 1907 was not different from its condition prior to that year, that being the first year that said dams were in use.

It was necessary for the plaintiff to prove, in order to recover in this action, that said dams raised the level of the water in the lake and stream on which said land is located sufficiently .high to submerge his land to a greater depth than it had been submerged by the flood waters prior to the erection of said dams. This he failed to do, and the fact that lands of a lower elevation had been submerged did not and could not prove that his own lands had been submerged by reason of said dams.

It is a part of the history of the state that the water levels of Lake Coeur d'Alene have been kept for each day for a number of years by the U. S. Geological Survey, and it seems to us that it would have been an easy matter to show the water levels of said lake during a number of years and thus prove conclusively the difference between the water levels of 1909, 1910 and 1911 and the water levels of said lake for years prior thereto. And certainly the elevation of the land in question above sea level could have been ascertained with accuracy. Such evidence would have certainly been much

better than the opinions or guesses of any witnesses in regard to those matters.

The trial judge in granting the motion for a nonsuit stated as follows: "In my judgment the plaintiff has wholly failed to connect the defendant with the injury of which he complains, and for that reason I have granted the motion for a nonsuit." The trial court was fully justified in coming to that conclusion.

The judgment must therefore be affirmed, and it is so ordered, with costs in favor of the respondent.

Budge and Morgan, JJ., concur.