(December 31, 1921.)

## LOUIS H. TESTO, Appellant, v. OREGON-WASHING-TON RAILROAD & NAVIGATION COMPANY, a Corporation, Respondent.

[203 Pac. 1065.]

PERSONAL INJURY — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — RAILROAD CROSSING—DUTY TO LOOK AND LISTEN—NONSUIT.

1. A motion for nonsuit admits the truth of plaintiff's evidence and of every fact which it tends to prove or which could be gathered from any reasonable view of it, and he is entitled to the benefit of all inferences in his favor which the jury would have been justified in drawing from the evidence had the case been submitted to it.

2. Contributory negligence is generally a question of fact for the jury and only becomes one of law when the evidence is reasonably susceptible of no other interpretation than that the conduct of the injured party contributed to his injury, and that, because of his negligence and carelessness, he did not act as a reasonably prudent person would have acted under the circumstances.

3. The duty of care imposed by law upon one approaching a railroad track requires that he look and listen from a point from which he can see or hear whether or not a train is approaching.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. Robert N. Dunn, Judge.

Action for damages for personal injuries. Judgment of nonsuit. *Affirmed.*

W. B. McFarland, for Appellant.

The failure of the respondent to sound a whistle or ring a bell when approaching the place where appellant was injured, and the violation of the speed ordinance passed by the city of Wallace constituted negligence *per se,* or at least raised a presumption of negligence. (*Wheeler v. Oregon R. R. etc. Co.,* 16 Ida. 375, 102 Pac. 347; *Graves v.*

*Northern Pac. Ry. Co.*, 30 Ida. 542, 166 Pac. 571; 33 Cyc. 735, 976; *Newton v. Oregon Short Line R. Co.*, 43 Utah, 219, 134 Pac. 567; *Norman v. Charlotte Elec. Ry. Co.*, 167 N. C. 533, Ann. Cas. 1916E, 508, 83 S. E. 835; *Johnston v. Delano*, 175 Iowa, 498, 154 N. W. 1013; *Lewis v. Rio Grande Western Ry. Co.*, 40 Utah, 483, 123 Pac. 97.)

The evidence did not warrant the court in deciding, as a matter of law, that appellant is guilty of contributory negligence. (*Graves v. Northern Pac. Ry. Co., supra;* 33 Cyc. 823.)

He had a right to presume that any train which might pass upon the tracks which he attempted to cross would proceed at a proper rate of speed, and observe the law regarding speed within the city limits, and would comply with the statutes in giving the prescribed warnings. (33 Cyc. 836; *Wolfe v. Chicago etc. Ry. Co.*, 166 Iowa, 506, 147 N. W. 901; *Cromeenes v. San Pedro etc. R. R. Co.*, 37 Utah, 475, Ann. Cas. 1912C, 307, 109 Pac. 10; *Lewis v. Rio Grande Western Ry. Co., supra.*)

"In order to constitute contributory negligence as a matter of law, the facts and circumstances must be such that no other inference could fairly and reasonably be drawn from them." (22 R. C. L. 1027.)

A. C. Spencer, Hamblen & Gilbert and E. R. Whitla, for Respondent.

It was the duty of appellant to look and listen before going upon the track of respondent railway company, and to look and listen from a point where observation would be effective. (*Keppleman v. Philadelphia & R. Ry. Co.*, 190 Pa. 333, 42 Atl. 697; *Follmer v. Pennsylvania Ry. Co.*, 246 Pa. St. 367, 92 Atl. 340; *Corcoran v. Pennsylvania Ry. Co.*, 203 Pa. St. 380, 53 Atl. 240; *Conkling v. Erie Ry. Co.*, 63 N. J. L. 338, 43 Atl. 666; *Fort Wayne & N. I. Traction Co. v. Schoeff*, 56 Ind. App. 540, 105 N. E. 924; *Cleveland etc. Ry. Co. v. Heins*, 28 Ind. App. 163, 62 N. E. 455; *Baltimore & Ohio Ry. Co. v. McClellan*, 69 Ohio St. 142, 68

N. E. 816; *United States Spruce Lumber Co. v. Shumate,* 118 Va. 471, 87 S. E. 723; *Crowson v. Minneapolis, St. P. & S. S. M. Ry. Co.,* 36 N. D. 100, 161 N. W. 725; *White v. Chicago & N. W. Ry. Co.,* 102 Wis. 489, 78 N. W. 585; *Boston & M. R. R. v. McGrath,* 179 Fed. 323, 102 C. C. A. 507; *Griffin v. San Pedro L. A. & S. L. R. Co.,* 170 Cal. 772, 151 Pac. 282, L. R. A. 1916A, 842; *Hinken v. Iowa Central Ry. Co.,* 97 Iowa, 603, 66 N. W. 882; *Clark v. Northern Pac. Ry. Co.,* 47 Minn. 380, 50 N. W. 365; *Brehm v. Philadelphia, B. & W. R. Co.,* 114 Md. 302, 79 Atl. 592; *Lundergan v. New York Cent. etc. Ry. Co.,* 203 Mass. 460, 89 N. E. 625; *Hines v. Texas & P. Ry. Co.,* 119 Fed. 157, 55 C. C. A. 654; *Nucci v. Colorado & S. Ry. Co.,* 63 Colo. 582, 169 Pac. 273; *Griskell v. Southern Ry. Co.,* 81 S. C. 193, 62 S. E. 205; *Cathcart v. Oregon W. R. & N. Co.,* 86 Or. 250, 168 Pac. 308; *Robison v. Oregon W. R. & N. Co.,* 90 Or. 490, 176 Pac. 594; *Golay v. Northern Pac. Ry. Co.,* 105 Wash. 132, 177 Pac. 804, 181 Pac. 700; *Wheeler v. Oregon R. & Nav. Co.,* 16 Ida. 375, 102 Pac. 347; *Burrow v. Idaho & W. N. R. R.,* 24 Ida. 652, 135 Pac. 838.)

McCARTHY, J.—This is an action to recover damages for injuries sustained by appellant, which he contends were caused by the negligence of respondent. At the time he received these injuries, appellant was an employee of the Northern Pacific Railroad Company at Wallace, Idaho. The railroad tracks of this company paralleled the tracks of the respondent in Wallace. Appellant had been working in the lower yards of the Northern Pacific Company and was going to the depot of that company. On his way he attempted to cross the main track of respondent at a point within the city limits where he claimed there was a trail or pathway used by pedestrians. There were at the time twenty or more box-cars standing on the side-track of the respondent company immediately north of the main line, obstructing this trail or pathway and the view of the main line track. Appellant stopped about eight feet from the box-cars, looked

to see if there was an engine attached to them and, there being none, swung upon the bumpers between two of the freight-cars and attempted to get down on the other side, but, losing his balance, stumbled upon the main-line track immediately ahead of a passenger train of the respondent. Appellant contended that respondent was negligent in the operation of its train in that, first, it was going at a negligent rate of speed, to wit, twenty-five miles an hour, through the city, contrary to an ordinance prohibiting a speed greater than six miles per hour, secondly, in that those in charge of the train neglected to sound the whistle or ring a bell within eighty rods, or any reasonable distance from the pathway. The trial court granted a nonsuit on the ground that appellant was guilty of contributory negligence which precluded a recovery. The questions as to whether the point at which appellant attempted to cross the track was a crossing and whether or not he was a trespasser were not submitted to us and are not involved. The sole question is whether the judgment of nonsuit can be sustained on the ground of contributory negligence.

The testimony of appellant is all-important on this appeal, and, so far as material to the question under consideration, it is as follows:

"Q. What did you do before going between the cars— crossing over these box-cars?

"A. I looked to see if there was any engine coupled to this train the first thing, and then I listened if there was any train approaching and I didn't hear any—I could not see on the passenger track—I didn't hear any, I listened.

"Q. You couldn't see whether there was any coming?

"A. No.

"Q. What kept you from seeing?

"A. The box-cars.

"Q. You listened and didn't hear any?

"A. I didn't hear any.

"Q. What did you do?

"A. Then I got hold of the grab-iron and jumped between the cars, and then I stumbled and I lost my balance

and I got across close to the passenger train and before I could get straightened up the passenger train hit me.

"(Cross-examination.)

"Q. When you came to this string of cars on the side-track, tell the jury how many cars there were about, as near as you can remember?

"A. I can't tell how many there were, the side-track was full—over twenty.

"Q. Probably over twenty box-cars?

"A. Yes.

"Q. How many cars were there up toward the Northern Pacific depot from the point where you were going across there?

"A. Six or seven cars. . . . .

"Q. When you came up to the line of box-cars that day, I understand you to say, you looked at either end of it to see if there was any engine coupled to the string of cars?

"A. Yes.

"Q. What else did you do?

"A. Listened for a train.

"Q. Where did you stop, if at all, to listen and look for a train?

"A. Before I crossed.

"Q. How far were you from the line of box-cars when you stopped to listen?

"A. About as far as from there to here.

"Q. About the distance between you and me?

"A. Yes.

"Q. You think about eight feet?

"A. Yes.

"Q. I understood you to say at that point you could not see any train on account of this big line of box-cars?

"A. No, sir, I could not see.

"Q. I wish you would tell the jury just how you swung up on the couplers—on the bunkers. What did you put your hands on?

"A. On both sides of the box-cars is grab-irons. I got hold of them grab-irons and gave a big swing jump on the

other side and lost my balance; just fell down, you know, and before I could straighten up the train hit me.

"Q. Let's not go quite so fast. You put your hands on the grab-irons?

"A. Yes.

"Q. Then swung your feet up?

"A. Yes.

"Q. Did you put your feet between the couplings on the cars or upon the bunkers?

"A. Yes, sure.

"Q. You put your hands down on the grab-irons on the other side?

"A. Yes, I got hold of them and fell on the other side.

"Q. I thought you said you swung out?

"A. If I had got hold of them grab-irons I would not have fell. You see I got it mixed up.

"Q. Did you fall down between the cars?

"A. I took a long swing.

"Q. You say you got mixed up; how did you get mixed up?

"A. On the top of the grab-irons there are two pins sticking up. I caught my coat there; I got hold of one side but I didn't get hold on the other side and at the same time I dropped on the ground.

"Q. You were trying to get over quickly?

"A. Of course, when I see no train I generally hurry across those cars; I didn't see any and I crossed between the cars fast.

"Q. In other words when you came up to this line of cars, you were particular to see whether there was an engine attached to them?

"A. Sure there was no engine.

"Q. After you looked you were sure? That is what made you look to see if there was an engine about to move the line of cars?

"A. Yes.

"Q. When you saw there was none there you hurried up to get through?

"A. Yes.

"Q. And you kinda stumbled and lost your balance and went down on the other side?

"A. Yes.

"Q. How did you land on the ground?

"A. Pretty near fell down. . . . .

"Q. What was the first you saw of the train?

"A. Something struck me.

"Q. Something hit you that quick before you had a chance to stand up?

"A. I heard the ring of the rail—train coming.

"Q. It happened very quickly?

"A. Yes."

"A motion for nonsuit admits the truth of plaintiff's evidence and of every fact which it tends to prove or which could be gathered from any reasonable view of it, and he is entitled to the benefit of all inferences in his favor which the jury would have been justified in drawing from the evidence had the case been submitted to it." (*Donovan v. Boise City*, 31 Ida. 324, 171 Pac. 670.)

"Contributory negligence is generally a question of fact for the jury and only becomes one of law when the evidence is reasonably susceptible of no other interpretation than that the conduct of the injured party contributed to his injury, and that, because of his negligence and carelessness, he did not act as a reasonably prudent person would have acted under the circumstances." (*Smith v. Oregon Short Line R. Co.*, 32 Ida. 695, 187 Pac. 539.)

It was appellant's duty to make a reasonable use of his senses in order to determine whether a train was approaching before going upon the tracks or, as generally expressed, it was his duty to look and listen. (*Graves v. Northern Pacific Ry. Co.*, 30 Ida. 542, 166 Pac. 571.) A corollary to the foregoing rule is that a person must not only look and listen, but must do so from a point where his observation is effective. It is not sufficient if he looks and listens from a point from which he cannot see or hear. (*Keppleman v.*

*Philadelphia & R. Ry. Co.,* 190 Pa. St. 333, 42 Atl. 697;
*Conkling v. Erie Ry. Co.,* 63 N. J. L. 338, 43 Atl. 666;
*Cleveland C., C. & St. L. Ry. Co. v. Heins,* 28 Ind. App.
163, 62 N. E. 455; *Baltimore & Ohio Ry. Co. v. McClellan,*
69 Ohio St. 142, 68 N. E. 816; *United States Spruce Lumber
Co. v. Shumate,* 118 Va. 471, 87 S. E. 723; *Crowson v. Min-
neapolis, St. P. & S. S. M. Ry. Co.,* 36 N. D. 100, 161 N. W.
725; *White v. Chicago & N. W. Ry. Co.,* 102 Wis. 489, 78
N. W. 585; *Boston & M. R. R. Co. v. McGrath,* 179 Fed.
323, 102 C. C. A. 507; *Griffin v. San Pedro, L. A. & S. L.
R. Co.,* 170 Cal. 772, 151 Pac. 282, L. R. A. 1916A, 842;
*Hinken v. Iowa Cent. Ry. Co.,* 97 Iowa, 603, 66 N. W. 882;
*Clark v. Northern Pac. Ry. Co.,* 47 Minn. 380, 50 N. W.
365; *Brehm v. Philadelphia, B. & W. R. Co.,* 114 Md. 302,
79 Atl. 592; *Lundergan v. New York Central & H. R. R.
Co.,* 203 Mass. 460, 89 N. E. 625; *Hines v. Texas & P. Ry.
Co.,* 119 Fed. 157, 55 C. C. A. 654; *Nucci v. Colorado &
S. Ry. Co.,* 63 Colo. 582, 169 Pac. 273; *Griskell v. Southern
Ry. Co.,* 81 S. C. 193, 62 S. E. 205; *Cathcart v. Oregon,
W. R. & N. Co.,* 86 Or. 250, 168 Pac. 308; *Golay v. Northern
Pac. Ry. Co.,* 105 Wash. 132, 177 Pac. 804, 181 Pac. 700.)

Appellant's own testimony shows that he was negligent
in that he did not look and listen from a point from which
he could see or hear whether a train was approaching on the
main line. His act in taking a big swinging jump between
the box-cars, as he said he did, was also clearly contributory
negligence. It was a foolhardy act and he assumed any risk
of falling entailed. We conclude that under any reasonable
interpretation of the evidence appellant was guilty of con-
tributory negligence which precluded his recovery. The
judgment of nonsuit is sustained. Costs are awarded to re-
spondent.

Lee, J., and McNaughton, District Judge, concur.

Rice, C. J., and Budge, J., dissent.