(August 2, 1924.)

R. C. YOUNG, Appellant, v. THE WASHINGTON WATER POWER COMPANY, a Corporation, Respondent.

[228 Pac. 323.]

FLOODING LAND — MAINTENANCE OF DAM — RAISING ORDINARY HIGH-WATER ELEVATION BY ARTIFICIAL MEANS—SUFFICIENCY OF EVIDENCE—NONSUIT—DECISION OF COURT—TIME TO FILE MEMORANDUM OF COSTS.

1. A motion for nonsuit admits the truth of plaintiff's evidence and of every fact which it tends to prove or which could be gathered from any reasonable view of it, and appellant is entitled to the benefit of all inferences in his favor which the jury would have been justified in drawing from the evidence, had the case been submitted to it.

2. An order granting a nonsuit, entered in the minutes, is the decision of the court within the meaning of C. S., sec. 7218, relating to the filing of memorandum of costs.

3. A memorandum of costs, served and filed within five days of the entry of an order granting a nonsuit, is in time.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. John M. Flynn, Judge.

Action for damages for flooding land. Judgment of nonsuit. *Affirmed.*

J. F. Ailshie and James F. Ailshie, Jr., for Appellant.

A motion for nonsuit admits the truth of plaintiff's evidence and of every fact which it tends to prove or which

could be gathered from any reasonable view of it, and appellant is entitled to the benefit of all inferences in his favor which the jury would have been justified in drawing from the evidence had the case been submitted to it. (*Brauner v. Snell*, 35 Ida. 243, 205 Pac. 558; *Testo v. Oregon-Wash. R. R. & Nav. Co.*, 34 Ida. 765, 203 Pac. 1065; *Marshall v. Gilster*, 34 Ida. 420, 201 Pac. 711; *McKenna v. Grunbaum*, 33 Ida. 46, 190 Pac. 919; *Donovan v. City of Boise*, 31 Ida. 324, 171 Pac. 670; *Southern Idaho Adventists v. Hartford F. I. Co.*, 26 Ida. 712, 145 Pac. 502; *Culver v. Kehl*, 21 Ida. 595, 123 Pac. 301; *Mineau v. Imperial Dredge etc. Co.*, 19 Ida. 458, 114 Pac. 23; *Stricker v. Hillis*, 17 Ida. 646, 106 Pac. 1128; *Colvin & Rinard v. Lyons*, 15 Ida. 180, 96 Pac. 572; *Pilmer v. Boise Traction Co., Ltd.*, 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254; *Bank of Commerce, Ltd., v. Baldwin*, 12 Ida. 202, 85 Pac. 497; *Later v. Haywood*, 12 Ida. 78, 85 Pac. 494; *Shank v. Great Shoshone & T. F. W. P. Co.*, 205 Fed. 833, 124 C. C. A. 35.)

The evidence was sufficient upon which to base a verdict and judgment for plaintiff. (*Petajaniemi v. Washington W. P. Co.*, 22 Ida. 20, 124 Pac. 783; *Turner v. Hart*, 71 Mich. 128, 15 Am. St. 243, 38 N. W. 890; *Hand v. Catawba Power Co.*, 90 S. C. 267, 73 S. E. 187.)

"Physical facts should be given greater weight than mere expert opinions and speculative theories." (*Alameda Min. Co. v. Success Min. Co.*, 29 Ida. 618, 161 Pac. 862; *Petajaniemi v. Washington W. P. Co., supra.*)

Under sec. 7218, C. S., a memorandum of costs and disbursements filed after the granting of an oral motion for nonsuit and prior to the rendering of a judgment is premature and should be stricken. (*White v. Stiner*, 36 Ida. 129, 209 Pac. 598.)

John P. Gray, W. C. McEachern and Frank T. Post, for Respondent.

The burden of proof was upon the appellant to show that the dams of respondent contributed to the alleged injury to his land; by the introduction of such testimony as is found

in this record the burden cannot be placed upon the respondent to show what the facts are. (*Hall v. Washington Water Power Co.*, 27 Ida. 437, 149 Pac. 507.)

There must be some causal relation between the wrong act charged and the injury complained of. (*Steel Car Forge Co. v. Chec*, 184 Fed. 868, 107 C. C. A. 92; *Newsome v. Western Union Tel. Co.*, 153 N. C. 153, 69 S. E. 10; *Central of Georgia Ry. Co. v. Dorsey*, 116 Ga. 719, 42 S. E. 1024; *Southern Ry. Co. v. Sittasen*, 166 Ind. 257, 76 N. E. 973.)

"When a party with the burden on him introduces evidence consistent with two different states of fact, he proves neither." (*Louisville & N. R. Co. v. East Tennessee V. & G. R. Co.*, 60 Fed. 933, 9 C. C. A. 314; *Ewing v. Goode*, 78 Fed. 442.)

"Where one claims his property has been damaged by certain acts of the defendant, it is not proper to ask the witness in what manner he has been damaged, but he should state the facts, and the jury will then in the exercise of its functions find whether the litigant has been damaged." (*Kendrick v. Furman*, 80 Neb. 797, 115 N. W. 541; *Combs v. Agricultural Ditch Co.*, 17 Colo. 146, 31 Am. St. 275, 28 Pac. 966, 15 L. R. A. 369; *Ake v. City of Pittsburgh*, 238 Pa. St. 371, 86 Atl. 268.)

Opinions of ordinary witnesses may be given upon matters of which they have personal knowledge in all cases in which from the very nature of the subject the facts disconnected from such opinions cannot be so presented to a jury as to enable them to pass upon the question with the requisite knowledge. (*Knauf v. Dover Lumber Co.*, 20 Ida. 773, 120 Pac. 157.)

The "decision" of the court referred to in C. S., sec. 7218, must have been in this case the granting of the nonsuit and the order dismissing the action, and the entry thereof in the regular journal and record of the court. (*Collins v. Belland*, 37 Cal. App. 139, 173 Pac. 601; *Crim v. Kessing*, 89 Cal. 478, 23 Am. St. 491, 26 Pac. 1074;

*Smith v. Ross,* 57 Cal. App. 191, 207 Pac. 55; *Mountain Home Lumber Co. v. Swartwout,* 33 Ida. 737, 197 Pac. 1027.)

McCARTHY, C. J.—This is an action by appellant against respondent for the flooding of his land, which he claims was caused by the maintenance of respondent's dam. From a judgment of dismissal following a granting of a nonsuit, and an order denying a motion to strike respondent's memorandum of costs, this appeal is taken. Of the numerous specifications of error we will expressly consider only the following: (1) The court erred in sustaining an objection to a question put to certain witnesses as to what caused the high water to stay on the land; (2) the court erred in granting the nonsuit and entering judgment of dismissal; (3) the court erred in denying appellant's motion to strike respondent's memorandum of costs and disbursements.

Appellant's land is on the Coeur d'Alene River. Respondent's dam is at Post Falls on the Spokane River, which is the outlet of Lake Coeur d'Alene. The record does not show exactly how far it is from the dam to appellant's land, but it reasonably appears that it is some considerable distance. The land in question is occupied by appellant as a farm. Coeur d'Alene River discharges into Lake Coeur d'Alene. The theory of appellant's case is that respondent's dam backed up the water of Lake Coeur d'Alene, thereby raising the water level of both the lake and Coeur d'Alene River; that the raising of the water level in the river caused it to flood appellant's land and the water to remain thereon during the spring of 1918 as late as June of that year, thereby ruining his crop of oat hay. Respondent's dam was built in 1906. Several witnesses for appellant testified that during the spring flood in 1904, before the dam was built, the water of the river stayed on appellant's land about two weeks; that from 1907 to 1911, after the building of respondent's dam, the water stayed much longer, ranging from five weeks to three months. In 1911 a number of farmers in the neighborhood put in a dike. This relieved conditions

from 1912 to 1918. In 1918 occurred an unprecedented flood, the highest that any of the witnesses had ever seen in that vicinity. It flowed over a railroad track near appellant's land, which is considerably higher than the river or the land, and flooded appellant's land fifteen feet deep. The highest flood in 1918 was around New Year. The operation of the railroad trains was suspended for two weeks and bridges were washed out. The highest water left the land within a month, but some water remained on for a month and a half. Another flood occurred in March, and the water remained on the land for about two months to a depth of about two feet in the high places, and about six feet in the low places. The exact character of the dam is not shown by the evidence. We gather, however, that the dam built in 1906, which is alleged to have been the cause of the damage, is a bear trap erected on a concrete dam. It also appears that this dam had gates, and appellant seems to have conceded at the trial that it was part of his case to show that these gates were closed. At any rate he examined two witnesses in an endeavor to show this fact. One witness, Barton, testified that on the day before Memorial Day, 1918, he was near the dam and judged from observation that the gates were closed. Another witness, Petajaniemi, testified that on one occasion, when driving past the dam, he observed that the gates were closed. However, he gave neither the month nor the year when he observed this, and therefore his testimony is of no value. Appellant introduced no evidence as to the height of the dam, although he admitted on the stand that he knew it. The only evidence offered as to elevations of the land and the river was that of an engineer, Sheffield, employed by appellant, who made measurements on April 21, 1922, during the high water for that year. He testified that, at a point where appellant's land had an elevation of 2,132 feet and the water was two feet deep on it, the river had an elevation of 2,126.54 feet, showing beyond question that at that time something was holding the water on the land other than the water level of the river. The presence of the water on the

land at that time must have been due to the fact that the dike built by the farmers, and a pipe and automatic water-gate constructed in the railroad embankment had been injured by the flood. At this same time the height of the water in the drain ditch was 2,130.7 feet. Appellant introduced on evidence as to the comparative water levels in the lake and river before and after the erection of the dam. The only evidence offered as to the effect of the dam in raising the water level was that of a farmer named Petajaniemi who said that he made an examination and the water level was about six inches higher after the dam was built. In the very nature of things this evidence seems almost incredible, and it does not agree with what the court said in *Petajaniemi v. Washington W. P. Co.*, 22 Ida. 20, 124 Pac. 783, but it is the only evidence on the point in the record. The witness Fisher testified that the high water comes on earlier of late years because so much of the timber has been removed.

The witnesses Thompson and Maak, two farmers of the vicinity, were asked why the water stayed on the land longer after 1907 than before. An objection was sustained. Appellant says they would have answered that it was because of the dam, and that they should have been allowed to give their opinion. The record shows that they did not know the height of the dam, the elevation of the water level in the lake or the river. Their opinion would have been based entirely upon the fact, to which they testified, that the water stayed on the land longer after the dam was built than before. They were not shown to have any expert knowledge or ability. This court has held:

"Opinions of ordinary witnesses may be given upon matters of which they have personal knowledge in all cases in which from the very nature of the subject the facts disconnected from such opinions cannot be so presented to a jury as to enable them to pass upon the question with the requisite knowledge; and where opinions are asked of expert witnesses on a matter of common knowledge, and such opinions are given, and it does not appear that the parties

against whom such evidence was given will be injured, it is not reversible error." (*Knauf v. Dover Lumber Co.,* 20 Ida. 773, 120 Pac. 157.)

Subject to this exception the general rule is that ordinary witnesses must be confined to testimony of the facts. This case does not fall within the exception recognized in the above opinion. This is not a case where "facts, disconnected from the opinion, cannot be so presented to a jury as to enable it to pass upon the question." The appellant seeks to draw the inference that the dam was responsible for the flooding of the land in 1918, and the retention of the water thereon, from the fact that the water stayed on the land longer after the dam was built than before. If this be a reasonable inference, it is one which the jury were as competent to draw as the witnesses.

The question whether the court erred in granting a nonsuit and entering judgment of dismissal is the most difficult one in the case. It is the settled rule in this state that:

"A motion for nonsuit admits the truth of plaintiff's evidence and of every fact which it tends to prove or which could be gathered from any reasonable view of it, and appellant is entitled to the benefit of all inferences in his favor which the jury would have been justified in drawing from the evidence, had the case been submitted to it." (*Donovan v. City of Boise,* 31 Ida. 324, 171 Pac. 670; *Brauner v. Snell,* 35 Ida. 243, 205 Pac. 558.)

Appellant relies very strongly on the case of *Petajaniemi v. Washington W. P. Co., supra,* in which this court held:

"One who raises by artificial means the ordinary high water elevation should pay the damages caused to a land owner by reason of the flood waters reaching a still higher level and flooding still more land than would have been the case had the change not been made."

In the same case the court also held in effect that expert evidence will not be accepted as infallibly correct as against evidence of facts given by eye-witnessses. Respondent on the other hand relies upon the case of *Hall v. Washington*

39 Idaho.—35

*W. P. Co.,* 27 Ida. 437, 149 Pac. 507, in which this court said:

"It was necessary for the plaintiff to prove, in order to recover in this action, that said dams raised the level of the water in the lake and stream on which said land is located sufficiently high to submerge his land to a greater depth than it had been submerged by the flood waters prior to the erection of said dams. This he failed to do, and the fact that lands of a lower elevation had been submerged did not and could not prove that his own lands had been submerged by reason of said dams."

"It is a part of the history of the state that the water levels of Lake Coeur d'Alene have been kept for each day for a number of years by the U. S. Geological Survey, and it seems to us that it would have been an easy matter to show the water levels of said lake during a number of years and thus prove conclusively the difference between the water levels of 1909, 1910, and 1911 and the water levels of said lake for years prior thereto. And certainly the elevation of the land in question above sea level could have been ascertained with accuracy. Such evidence would have certainly been much better than the opinions or guesses of any witnesses in regard to those matters."

The evidence relied upon by appellant in support of his contention that the dam caused the land to overflow and the water to remain upon it is the evidence of the witnesses that the water remained upon the land longer after the dam was built than before. In view of the evidence of an unprecedented flood, it cannot be inferred that the dam was the cause of the overflowing of the land early in the spring. In view of the fact that the water stood two feet deep upon the land, when the water level of the river was several feet below the land, it cannot reasonably be inferred that the water level of the river was responsible for holding the water on the land. It seems to be conceded, as stated in *Hall v. Washington W. P. Co., supra,* that it was part of appellant's case to show that the gates of the dam were closed. The only evidence introduced upon this subject tends to show

that they were closed on one day late in May. The evidence is thus fatally defective in this respect. We conclude that this case falls within the decision in *Hall v. Washington W. P. Co., supra,* rather than *Petajaniemi v. Washington W. P. Co., supra.* The most that can be said for this evidence is that it perhaps creates a suspicion that the dam may have had something to do with the flood and the holding of the water on the land, but it does not support a reasonable inference that the maintenance of the dam did contribute to the overflowing, or the holding of the water on the land, to any particular extent or in any particular degree. We conclude that the court did not err in granting a nonsuit and entering judgment of dismissal.

The motion to strike respondent's memorandum of costs and disbursements is on the ground that it was prematurely filed. It was filed within five days after the court granted the nonsuit and discharged the jury, but before the court entered formal judgment of dismissal. C. S., sec. 7218, provides that the party in whose favor the judgment is rendered, and who claims his costs, must, within five days after the verdict or notice of the decision of the court or referee, file and serve a memorandum of costs. Appellant contends that an order granting a nonsuit is not appealable. (*White v. Stiner,* 36 Ida. 129, 209 Pac. 598.) This is true. The final disposition of the case required the judgment of dismissal, which was eventually entered following the granting of the nonsuit. C. S., sec. 7218, however, says that the memorandum of costs must be served and filed, not within five days of the judgment, but within five days after the verdict or notice of the decision of the court or referee. C. S., sec. 6866, provides: "Sec. 6866. Upon a trial of a question of fact by the court, its decision must be given in writing and filed with the clerk within 20 days after the cause is submitted for decision." And sec. 6867 provides: "Sec. 6867. In giving the decision, the facts found and the conclusions of law must be separately stated. Judgment upon the decision must be entered accordingly."

The findings and conclusions are thus ordinarily the decision of the court to which sec. 7218 refers. This court has so held in *Smith v. Faris-Kesl Const. Co.,* 27 Ida. 407, 150 Pac. 25. Both the statute and the cases construing it differentiate between the decision and a formal judgment. The question in this case is whether the order of the court granting the nonsuit, or the judgment of dismissal entered later, constitutes the decision within the meaning of sec. 7218. The minutes of the court on the second day of the trial show that, at the time respondent moved for nonsuit, the motion was granted and the case dismissed. We conclude that this action of the court constituted its decision within the meaning of the statute. In this connection see *Collins v. Belland,* 37 Cal. App. 139, 173 Pac. 601.

We find it unnecessary to expressly discuss the other specifications of error. Suffice it to say that we have examined them and find in none of them ground for reversing the judgment.

The judgment and order are affirmed, with costs to respondent.

Budge, William A. Lee, Wm. E. Lee, JJ., and Johnson, District Judge, concur.