(No. 6042. December 22, 1933.)

W. D. DENTON, Respondent, v. CITY OF TWIN FALLS, Appellant.

[28 Pac. (2d) 202.]

George M. Paulson, for Appellant.

J. H. Barnes, for Respondent.

HOLDEN, J.—June 20, 1932, respondent .fell upon a cement sidewalk and commenced this action to recover damages for alleged personal injuries sustained as a result of the fall. From a judgment in favor of respondent the defendant city appeals.

Four alleged errors are relied upon for a reversal of the judgment: 1. That the court erred in denying appellant's motions for nonsuit and instructed verdict (made at the close of all the evidence), in that it was claimed respondent was guilty of contributory negligence, as a matter of law.

2. That the court erred in giving instructions 21, 22, 23 and 24, in that it is contended those "instructions do not require any determination that the sidewalk upon which the injury occurred, was one which appellant had the duty of maintaining or keeping free of defects as a condition precedent to the recovery of damages by respondent."

3. That the evidence does not support the verdict or judgment for the alleged reason that there is a total lack of proof that the sidewalk in question was one within the city of Twin Falls, and that it was a sidewalk within the city of Twin Falls which the city had the duty to maintain.

4. That the court erred in denying appellant's motion for nonsuit (renewed at the close of all the evidence), for the alleged reason that there is no proof that the place where the accident occurred was on a public street within the limits of the city of Twin Falls, or a street for which the city is responsible.

In its brief in support of the first specification of error, appellant sets out some of the testimony given by respondent. It appears from appellant's brief and also from the record that respondent, among other things, testified that:

"Q. Mr. Denton, had this place in the sidewalk impressed you as being particularly dangerous at any time?

"A. Yes, sir, it was very dangerous.

"Q. Now, Mr. Denton, when you came to this bad place in the sidewalk, state whether or not you had to observe any greater degree of care in walking over that than you did in walking over the rest of the sidewalk?

"A. Yes, I always had to use more care in passing over that broken place.

"Q. Were you walking any faster than usual?

"A. No, I was just walking along there the same as anyone would walk on the sidewalk.

"Q. How far back from that break (referring to a break in the sidewalk at the place where the accident occurred) did the slope of the cement block extend? That is, the perceptible slope—the noticeable slope?

"A. About four feet.

"Q. Did that make any difference—any perceptible difference to a person who was walking along that sidewalk, in the feel of the walk under your feet—Could you feel that raise?

"A. Well, it was very hard to walk on; it was a steep raise; you couldn't hardly walk on it.

"Q. Now, you remember going up on the raise, do you?

"A. No, I don't remember going up on the raise.

"Q. It has rather a sharp lift there, has it not?

"A. Yes, it is quite a lift.

"Q. So that there was a four foot lift or incline up to this crack or break, without regard to which way you approached the lift, was there not?

"A. Yes, sir.

"Q. And it was steep enough so that a person walking along the sidewalk would notice it?

"A. Yes, sir, they would notice it.

"Q. Now, was that lift smooth or rough up to the peak of the lift?

"A. Well, it was a gradual lift; there was some rocks and stones on the sidewalk, on both sides of it, at the time; quite a number of rocks and sticks throwed over the sidewalk on either side.

"Q. Was that such a lift, Mr. Denton, that if it had been anywhere else you would have observed it when you stepped up on it?

"A. State that question again, please.

"Q. Was that such a lift that if you had encountered it anywhere else on the sidewalk you would have noticed it?

"A. Certainly.

"Q. It was such a lift, you think, that an ordinary person would have noticed it if they had stepped on it?

"A. Yes, sir, I would think they would have noticed it if they stepped on it.

"Q. Did you notice it?

"A. Not at that particular time. I must have forgotten it.

"Q. As you approached this break there on the afternoon of the 20th, was the fact that the walk was bad at that place —was that fact present in your mind before you got there?

"A. Yes; just before I reached that place I had thought of it being there.

"Q. Yes. You had the two young ladies with you, and you knew that this place was very dangerous; but you were not paying very much attention to the girls; and yet you think you must have forgotten about that place? Is that correct?

"A. Well, I had crossed over the place a number of times and had got kind of used to going over it; yet I knew that anyone had to take especial care in going over that place without stumbling and falling.

"Q. And what happened when you got up in the immediate vicinity at this 812 Fourth Avenue West, Mr. Denton?

"A. Well, I was just walking along there and I came up by No. 812, and there was some boys out there in the yard playing and· holloing, and just as I went to pass over this break one of them yelled out, and it kind of startled me and I looked around to see what was going on, and the thing that I next knew I was getting up.

"Q. Well, what I am trying to get at, Mr. Denton, what was the reason that you lost your footing and fell?

"A. Well, I stumped my foot over this broken place there in the walk and fell.

"Q. Now, you stated to your counsel, in answer to a question that there was some outcry or some yell from some of the children playing in a yard nearby. Do you remember that?

"A. Yes, sir.

"Q. Now, where did that take place, Mr. Denton, with reference to your going up upon the lift of the sidewalk?

"A. It seems to me that it was while I was on the lift, because just when he let out his yell, then is when I fell.

"Q. Then, if you stated that after the yell the next thing you remember was after you were down—

"A. Yes, sir.

"Q. (Con.) —is that correct?

"A. Yes, sir.

"Q. Now, Mr. Denton, what can you say as to the condition of the edges of this break as to whether they were smooth· or not?

"A. They were very rough.

"Q. Just explain that a little more fully. How do you mean by "very rough"? You mean they were jagged and indented like the teeth of a saw?

"A. Yes, sir. A broken piece of concrete is very uneven and sharp and gritty and rough. That is the best description I can give you.

"Q. What can you say as to whether the upper and lower edges of that break were even? Was it what you would call a clean break?

"A. No; they were uneven.

"Q. Speaking now more particularly with reference to the south side of the cement walk, what can you say as to whether that was smooth, or as to whether there was an overhang?

"A. There was an overhang."

Appellant's motion for judgment of nonsuit and an instructed verdict is based upon the grounds, and it very ably and forcefully contends: That respondent, as a matter of law, is guilty of contributory negligence, in that he knew the place where the accident occurred to be and regarded it as very dangerous; that at the time of the alleged injury respondent saw the raise in the sidewalk immediately before going upon it; that he knew its dangers and did not take any care to protect himself; that in going upon the sidewalk, with his attention attracted elsewhere, he assumed the risk of injury, and that respondent, having a safe way around the defective sidewalk, was required, in the exercise of due care, to pass around the defect in the sidewalk, and vigorously insists that, under respondent's testimony, the court erred in denying its motions.

It has been repeatedly held by this court that a motion for nonsuit admits the truth of plaintiff's evidence and of every fact which it tends to prove or which could be gathered from any reasonable view of it, and he is entitled to the benefit of all inferences in his favor which the jury would be justified in drawing from the evidence. (*Young v. Washington Water Power Co.*, 39 Ida. 539, 228 Pac. 323; *Brauner v. Snell*, 35 Ida. 243, 205 Pac. 558; *Testo v. Oregon-Washington R. & N. Co.*, 34 Ida. 765, 203 Pac. 1065; *Marshall v. Gilster*, 34 Ida. 420, 201 Pac. 711; *McKenna v. Grunbaum*, 33 Ida. 46, 190 Pac. 919.)

And in Carson against the city of Genesee, also a "sidewalk" case, 9 Ida. 244, 74 Pac. 862, 108 Am. St. 127, a case in which "it appears that the walk was in good repair on the other side of the street, and that the respondent (Carson) could have reached her home over a sidewalk that was in safe condition," this court held where one knows before an accident that there is a broken board in the sidewalk, "and passes over the same at nightfall, and receives injuries on account thereof," and testifies that she "didn't even think about those holes," and that she was walking along "just the same as anyone would walk up the street"; that "such facts did not, as a matter of law, establish contributory negligence, but were properly submitted to the jury, together with the other facts in the case," and that "previous knowledge of a dangerous place in a street or sidewalk is not *per se* evidence of such negligence as will preclude a recovery, except in those cases where the known defect is so great as to prevent a reasonably cautious person attempting to pass over such street or sidewalk in any usual manner."

In *Osier v. Consumers' Co.*, 41 Ida. 268, 239 Pac. 735, it was held that "contributory negligence is a matter of defense and the burden of proving contributory negligence rests upon the defendant unless it is shown by plaintiff's evidence," it being further held that "it is well settled rule in this state that a person injured will not be precluded from recovery on the ground of contributory negligence, unless it was such that upon a consideration of all the facts and circumstances as they appeared at the time, a reasonably prudent person would not have acted as did the injured party; and only when it appears upon the undisputed facts that a reasonably prudent person would have acted differently does it become a question of law"; and that "the use of a street, sidewalk or crossing known to be defective or obstructed, which is not so obviously dangerous that no prudent person would attempt to use it, is not negligence as a matter of law which will bar a recovery for an injury caused by the defect or obstruction." (See, also,

*Muir v. City of Pocatello,* 36 Ida. 532, 212 Pac. 345; *Mc-Kenna v. Grunbaum,* 33 Ida. 46, 190 Pac. 919; *Smith v. Oregon Short Line R. R. Co.,* 32 Ida. 695, 187 Pac. 539.)

Touching the question of temporary forgetfulness, in another "side walk" case, *Butland v. City of Caldwell,* 51 Ida. 483, 488, 6 Pac. (2d) 493, this court expressed itself as follows:

"Temporary forgetfulness, inattention or distraction do not generally constitute contributory negligence. 'When a person has exercised the care and caution which an ordinarily prudent person would have exercised under the same or similar circumstances, he is not negligent merely because he temporarily forgot or was inattentive to a known danger.' (45 C. J., 950, and authorities cited.) Ordinary care is all that is required. (45 C. J., 947, 949, and authorities cited; *Osier v. Consumers Co.,* 42 Ida. 789, 796, 248 Pac. 438; *Giffen v. City of Lewiston,* 6 Ida. 231, 55 Pac. 545.)"

Mr. Harley Rayborn, an officer of appellant, having charge of the street and water department of the city, testifying in behalf of appellant stated: That he had been working with sidewalks for a good many years; that "lifts" of the sort existing at the point where the accident occurred were not uncommon; that it is not unusual for concrete or cement sidewalks, at times in warm weather, to show "lifts" of that sort; that they all do it; that there were a number of other places in the city, on the sidewalks under his control, "Where a like condition has existed," so that it appears the sidewalk in question, at the point where the accident occurred, was "not so obviously dangerous that no prudent person would attempt to use it." And this court held in *Carr v. Wallace Laundry Co.,* 31 Ida. 266, 170 Pac. 107, that where "the minds of reasonable men might differ as to the existence of negligence or contributory negligence, they are questions for the jury." This court also held in *Fleenor v. Oregon Short Line R. R. Co.,* 16 Ida. 781, 102 Pac. 897, that "where on undisputed facts reasonable and fair minded men may differ as to the inferences and conclusions to be drawn, or where different conclusions might reasonably be

reached by different minds, the question of negligence is one of fact to be submitted to the jury. Where upon all the facts and circumstances there is a reasonable chance or likelihood of the conclusions of reasonable men differing, the question is one for the jury.''

It is contended that the court erred in giving instructions numbered 21, 22, 23 and 24, in that it is claimed an attempt was made by instruction No. 21 to fully state all of the elements necessary to a recovery, and that instructions numbered 22, 23 and 24 each charged the jury that if it found ''from the evidence all of the facts and conditions set forth in the preceding instruction (No. 21) existed at the time of said fall, . . . . it is your duty to find for him (respondent) such an amount as damages as will compensate him . . . . '' However, the court later and by instruction No. 25 instructed the jury as follows:

''The court has not attempted to embody all of the law in this case in any one instruction. In considering any single instruction you must consider it in connection with all other instructions, and construe them in harmony with each other. You are not at liberty to single out a particular instruction and base your verdict upon it alone.''

We have carefully examined all of the instructions the court gave the jury in the case at bar and find that the court fully and correctly instructed the jury, and that there is no conflict in the instructions on any decisive or controlling question which the jury had to determine. Instructions must all be read and viewed together. (*Just v. Idaho Canal Co., Ltd.*, 16 Ida. 639, 102 Pac. 381, 133 Am. St. 140.)

By specification numbered two appellant complains that the court also erred in giving instructions numbered 21, 22, 23 and 24, in that it is contended that those instructions did not require the jury to determine ''that the sidewalk upon which the injury occurred, was one which appellant had the duty of maintaining or keeping free of defects as a condition precedent to the recovery of damages by respondent.'' In other and separate instructions the court correctly in-

structed the jury concerning those matters, which disposes of the second specification.

■ Appellant, by specification numbered three complains that there is a total lack of proof that the sidewalk in question is within the city of Twin Falls, and by specification numbered four it is complained that there is no proof that the place where the accident occurred was on a public street within the limits of the city of Twin Falls, "or a street for which the city is responsible." These alleged errors present but a single question and that is as to whether the accident occurred inside or outside of the limits of the city of Twin Falls.

The respondent proved, and it is not disputed in the evidence, that city taxes were levied on property along Fourth Street, where the accident occurred; that the city had been accustomed to taking care of that street, and the sidewalk on it, and that the public on an implied invitation of the city had used the sidewalk on which the accident occurred for a period of more than five years; and that shortly after the accident the city repaired the sidewalk. That proof, taken and considered in connection with an implied invitation by the city to the public to use the sidewalk is suffi-. cient.

■ Where there is a sidewalk on one side of a street, in good repair and in safe condition, by which a pedestrian could reach his destination, but he uses a sidewalk on the opposite side of the street, with previous knowledge of its dangerous condition, on an implied invitation to him and the public, and is injured, such pedestrian is not thereby guilty of contributory negligence, as a matter of law, unless it appears from undisputed evidence that a reasonably prudent and cautious person would not have attempted to pass over the dangerous sidewalk at all, in any usual manner. (*Gallup v. Bliss*, 44 Ida. 756, 262 Pac. 154; *Carson v. City of Genesee*, 9 Ida. 244, 74 Pac. 862; *Osier v. Consumers' Co.*, 41 Ida. 268, 239 Pac. 735, 108 Am. St. 127.)

Applying the above-stated rule to the case at bar, we conclude that respondent was not guilty of contributory

negligence, as a matter of law; that the court did not err in its instructions, and that there is no substantial merit in the alleged errors assigned by appellant.

Judgment affirmed, with costs to respondent.

Budge, C. J., and Givens, Morgan and Wernette, JJ., concur.