(No. 5997. January 26, 1934.)

L. M. HENDRIX and LADINE HENDRIX, Husband and Wife, Respondents, v. CITY OF TWIN FALLS, a Municipal Corporation, Appellant.

[29 Pac. (2d) 352.]

George M. Paulson, for Appellant.

A. J. James, for Respondents.

HOLDEN, J.—In 1904, the Twin Falls Land and Water Company constructed over and across unclaimed, sage-brush land, as a part of an irrigation system in Twin Falls county, a lateral for the distribution of water for irrigation and other beneficial purposes. Shortly after the construction of the lateral a village government was established, and included within its limits a section of the lateral, and land on each side and fronting on the lateral was platted into town lots. Later, the village was organized into the City of Twin Falls, and in 1909, the said Company transferred the irrigation system to the Twin Falls Canal Company, and in the same year, one Murtaugh, through whose orchard the said lateral had been constructed, applied to the city council of said city for permission to change the location of said lateral and obtained the consent of the city to and did construct a lateral (commonly known and hereinafter referred to as canal No. 38), down through Eighth Avenue East, one of the streets of said village, and later of said city, and then the lateral constructed through said orchard was abandoned. Canal No. 38 is about ten feet wide and about five feet deep, with steep banks, and enters said city from the east, crosses Locust Street, which intersects Eighth Avenue East at right angles, forming the eastern boundary line of the city, and then extends on down through that avenue, in a westerly direction, a distance of four blocks to Blue Lakes Boulevard, which also intersects Eighth Avenue at right angles, continuing on through and beyond the city limits. After entering the city, the said canal flows on rapidly in a westerly direction, is open for the said distance of four blocks, where it appears to have been covered, and during irrigation seasons usually carries from 38 to 50 second-feet of water, and flows a stream of water from three to four feet deep. Between Locust Street

and Blue Lakes Boulevard, foot and automobile bridges cross the canal. The side of one bridge had dropped from two to three feet below the level of the road, and a woven wire fence put up along the side of the bridge had worked loose at one corner, leaving a space of about three feet in diameter. A plank was gone from another bridge, about a foot wide and twelve feet long, making an open space the width and length of the plank, and about the full length of the bridge. In fact, all of the bridges, between Locust Street and Blue Lakes Boulevard, were in a very bad state of repair. In 1915, the city built a woven wire fence along the north and south banks of canal No. 38, but did not keep the fences in good repair. On the north side of the canal, between the north bank and the property line, a concrete sidewalk was constructed, and on the south side of the canal, between the south bank and the curb line, is a space about 22 feet wide for the use of automobiles and other vehicles, extending east and west from Locust Street to Blue Lakes Boulevard, and then still further south, between the curb line and property line of Eighth Avenue East, is a concrete sidewalk for the use of pedestrians. In places, the canal banks had caved in and there were openings extending beyond the fence into the traveled portion of the avenue, and in places the woven wire fence had fallen to the ground. These conditions had existed for a long while prior to the time the child was drowned in canal No. 38.

It is alleged and admitted that the section between Locust Street and Blue Lakes Boulevard is thickly populated.

March 17, 1931, respondent L. M. Hendrix and wife, respondent Ladine Hendrix, with their infant son, Ralph Monroe Hendrix, slightly more than three years old, moved to the south side of Eighth Avenue East, between Locust Street and Blue Lakes Boulevard, facing the south bank of said canal No. 38. At about 12 o'clock, noon, April 18, 1931, the boy asked permission of his mother to go out in the yard and pick dandelions. He went out the back, or south, door of the house, and to the west side. In about 5

minutes afterward, his mother went outside to look for him, failing to find him, she started toward Blue Lakes Boulevard, looking in yards as she passed along, and noticing cars stopping and people congregating at Blue Lakes Boulevard, she hastened there and found that his body had just been taken from canal No. 38. It appears that approximately 15 minutes had elapsed from the time she saw him leave the house to the time she saw his body at the Boulevard. The child was seen, after he left the house, on the north side of the canal, about a block and a half distant from the Hendrix house, and to the west, or towards Blue Lakes Boulevard, and was asked where he was going, and he answered that he was going to pick dandelions.

February 4, 1932, this action was commenced to recover damages. It was tried at the October, 1932, term of the district court for Twin Falls county. When plaintiffs and respondents rested, the defendant city moved for judgment of nonsuit, which was denied. At the close of all the evidence, the city moved that the court instruct the jury to return a verdict in its favor, which motion was also denied. The jury returned a verdict in favor of the respondents, after which appellant moved for judgment *non obstante veredicto,* which was denied, and judgment entered on the verdict, from which the defendant city appeals.

The controlling questions presented in the court below by the motions for judgment of nonsuit, and instructed verdict and judgment *non obstante veredicto,* respectively, and on this appeal, are: First. Does the law impose the duty on the appellant City of Twin Falls to keep Eighth Avenue East, and the bridges across canal No. 38, between Locust Street and Blue Lakes Boulevard, reasonably safe from danger of injury or death to pedestrians by accidentally falling into canal No. 38? And second: Insufficiency of the proof of the cause of the drowning of the child.

In July, 1912, the council of said city passed an ordinance declaring all open or uncovered ditches, located within its limits, having a width of three feet or more and

carrying water to the depth of twelve inches or more, public nuisances. Shortly after the passage of that ordinance, George E. Harlan, manager of the said Twin Falls Canal Company (which company then owned and still owns canal No. 38) was prosecuted by the City of Twin Falls and convicted in the district court of Twin Falls county of violating said ordinance. Harlan appealed to this court from the judgment of conviction (*City of Twin Falls v. Harlan,* 27 Ida. 769, 151 Pac. 1191). The ditch involved in that case is the identical ditch involved in this case. In the Harlan case the ditch is referred to as the "Eighth street ditch," in the case at bar it is referred to as "canal No. 38." The said city sought by the passage of said ordinance and the prosecution of Harlan, to compel the Twin Falls Canal Company to cover canal No. 38, or otherwise protect people from falling into it, as clearly appears from the following statement of this court in that case: "Under the facts of the case, the question involved is whether it is the duty of the canal company or the city, to cover said ditch or otherwise protect people from falling therein." And in deciding that question this court squarely held that "it was clearly the duty of the city to cover said ditch, and if it were dangerous, to protect the people from such danger. The city has the power, under the law, to establish, lay out, alter, open any streets and alleys, improve and repair them, also to construct bridges and to wall and cover channels or watercourses," and further held that "the city certainly cannot evade its duty by declaring said ditch a nuisance, when the nuisance is created by its own neglect to perform its duty." We find no reason for modifying or reversing the Harlan case, and, therefore, adhere to the rule therein announced.

Cities are liable for negligent discharge of duty of keeping streets in reasonably safe condition. (*Goodman v. City of McCammon,* 42 Ida. 696, 247 Pac. 789.)

And the power granted to cities to establish, lay out, alter, open streets, improve, repair, manage and regulate them, imposes a corresponding obligation upon a city

to exercise reasonable care in the maintenance of its streets in a reasonably safe condition, and that duty extends to all obstructions placed therein, no matter by whom (*Powers v. Boise City*, 22 Ida. 286, 125 Pac. 194), and that duty, as between the city and the public, likewise extends to and includes a street down through which a ditch has been constructed with the acquiescence or consent of the city, in which case, a city must either cover the ditch or supply reasonable protection against accidental injury or death by falling into the ditch. (*Twin Falls Canal Co. v. Harlan, supra; Douglas v. City of Moscow*, 50 Ida. 104, 294 Pac. 334.)

Whether appellant, in the exercise of reasonable care in the maintenance of Eighth Avenue East in a reasonably safe condition, provided reasonable protection along the north and south banks of canal No. 38, as well as the approaches to and the sides of the bridges across that canal, between Locust Street and Blue Lakes Boulevard, was a question for the jury; in other words, whether the conditions shown to exist concerning canal No. 38, including the bridges over that canal, showed a want of reasonable care on the part of the city, in the maintenance of that street in a reasonably safe condition, was a question for the jury. (*Douglas v. City of Moscow, supra*.)

And children playing in a street are entitled to the benefit of the rule requiring the exercise of reasonable care to keep a street in a reasonably safe condition. (7 McQuillin's Municipal Corporations, 2d ed., sec. 2946; 43 Corpus Juris, p. 1074.)

We come now to the contention of appellant that the proof of the drowning of the child is insufficient. It is argued that no witness testified as to how or where the child got into the canal; that the possibilities are numerous—that he may have climbed over or under the fence and fallen, or that "he may have crawled or fallen through some hole in or under the fence."

"There are very few things in human affairs, and especially in litigation involving damages, that can be established to such an absolute certainty as to exclude the possi-

.bility, or even some probability, that another cause or reason may have been the true cause or reason for the damage rather than the one alleged by the plaintiff. But such possibility, or even probability, is not to be allowed to defeat the right of recovery, where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a reasonable juror in concluding that the thing charged was the prime and moving cause," and "it is not necessary to exclude the possibility, or even some probability, that another cause or reason may have been the true cause or reason for the damage, rather than the one alleged by a claimant." (*Roe v. Boise Grocery Co.,* 53 Ida. 82, 21 Pac. (2d) 910.)

It has been repeatedly held by this court that a motion for nonsuit admits the truth of plaintiff's evidence and of every fact which it tends to prove or which could be gathered from any reasonable view of it, and he is entitled to the benefit of all inferences in his favor which the jury would be justified in drawing from the evidence. (*Denton v. City of Twin Falls, ante,* p. 35, 28 Pac. (2d) 202; *Young v. Washington Water Power Co.,* 39 Ida. 539, 228 Pac. 323; *Brauner v. Snell,* 35 Ida. 243, 205 Pac. 558; *Testo v. Oregon-Washington R. & N. Co.,* 34 Ida. 765, 203 Pac. 1065; *Marshall v. Gilster,* 34 Ida. 420, 201 Pac. 711; *McKenna v. Grunbaum,* 33 Ida. 46, 190 Pac. 191.)

And an instruction which directs a verdict has the same effect as an order sustaining a motion for nonsuit, in that it admits the truth of the adversary's evidence and every inference of fact that may be legitimately drawn therefrom. Its effect is to instruct the jury that there is no evidence to support the claim of the party against whom such verdict is directed. (*Smith v. Marley,* 39 Ida. 779, 230 Pac. 769.)

Section 7–224, I. C. A., provides: .

"When, at the close of the testimony, any party to the action moves the court to direct a verdict in his favor, and such motion is denied, upon a subsequent motion that judgment be entered, notwithstanding the verdict, or not-

withstanding the jury has disagreed and been discharged, the court shall grant the same if the moving party was entitled to such direct verdict. Such motion may be made at any time within ten days after the rendition of the verdict or disagreement and discharge of the jury. If such motion be granted, the order granting the same shall operate to vacate any judgment theretofore entered upon the verdict, and judgment shall thereupon be entered accordingly.''

Section 7–224, *supra,* it will be observed, vests trial courts with power to grant motions for judgment *non obstante veredicto,* only in those cases where the moving party is entitled to a *directed verdict.* Under the rule in *Smith v. Marley, supra,* a motion for a directed verdict admits the truth of the adversary's evidence and every inference of fact which may be legitimately drawn therefrom. Therefore, a motion for judgment *non obstante veredicto* also ''admits the truth of the adversary's evidence and every inference of fact which may be legitimately drawn therefrom.''

The judgment is affirmed with costs to respondents.

Budge, C. J., and Morgan, Givens and Wernette, JJ., concur.