MILLER *v.* MANISTIQUE & LAKE SUPERIOR RAILWAY CO.

RAILROADS — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — CROSSING ACCIDENT—QUESTION FOR JURY.

In an action against a railroad company for personal injuries and damage to plaintiff's automobile caused by a collision with defendant's train, which, on a very dark night, was backing across the street on which plaintiff was driving, testimony by plaintiff and other occupants of the automobile that they were driving slowly, looking and listening, that they neither saw nor heard a train and no light was displayed, was not merely negative in character, but was positive, and where it was controverted by testimony for defendant the questions of defendant's

negligence and plaintiff's contributory negligence were for the jury.[1]

Error to Schoolcraft; Fead (Louis H.), J.  Submitted January 12, 1926.  (Docket No. 96.)  Decided March 20, 1926.

Case by Vern R. Miller against the Manistique & Lake Superior Railway Company for personal and other injuries.  Judgment for plaintiff.  Defendant brings error.  Affirmed.

*Alexander L. Smith, Francis J. Shields,* and *James C. Wood,* for appellant.

*McDonald & Kaltz,* for appellee.

SNOW, J.  About 9:30 o'clock in the nighttime of July 7, 1922, the plaintiff's Ford sedan, while being driven by him, was struck and demolished by a train of the defendant backing along its tracks across Chippewa avenue, in the city of Manistique.  Plaintiff brought an action against the defendant to recover for this damage and was awarded a verdict for $690. Defendant has appealed.

Chippewa avenue is a public street on the west side of the city and runs north and south, and is intersected by Elk street, which runs east and west.  Defendant's railroad track intersects Chippewa avenue at a point about 184 feet from the south line of Elk street, and between it and Elk street are three switch tracks of the Soo Line Railway, the southerly one being 120 feet north of defendant's track.  On Elk street west of Chippewa avenue and north of defendant's track are a number of houses, and the track comes from the north between the third and fourth houses and angles to the south and east where it crosses Chippewa avenue in a slightly southeasterly direction.  In the

---

[1]Railroads, 33 Cyc. pp. 1103, 1111.

daytime a person standing in Chippewa avenue 50 feet north of the track can see along it to the west 140.3 feet, while one standing 25 feet north of the track can see a distance of 300 feet.

Plaintiff was driving south. The night was very dark, and he was not familiar with the street. He testified he was going about 15 miles an hour when he struck the first switch track; that he then slowed down to about 12 miles an hour, and passed over the others. When he first saw defendant's track by his headlights showing up the rails, he was about 25 or 30 feet from it, and slowed down to 5 or 8 miles an hour. He says he had his car under control and could stop it in 4 or 5 feet; that he looked both ways and saw no train; that he drove toward and onto the track and kept looking all the time to see if a train were coming; that he drove on the track while still looking and saw no train. There was no light on the rear of the train, the front approaching car, and there was no man stationed on the first car. Plaintiff was corroborated by others who were in the car. His wife sat beside him in the front seat and she testified that she saw the defendant's tracks when from 20 to 25 feet away; that she could see to the west and that she looked to the west and ahead as well; that she did not see any train coming from the west; that she was looking to see if a train was coming right up to the point when they reached the track, and that she saw none. Mrs. Gould, who was sitting on the back seat of the car testified that plaintiff was driving slowly and that she saw no train.

At the close of plaintiff's case the defendant moved for a directed verdict on the grounds that there had been no negligence shown, and that undisputedly plaintiff had been guilty of contributory negligence barring his recovery. This motion was overruled and the court later submitted the case to the jury, leaving for

its consideration only the question as to whether or not the train had a man with a lighted lantern on the head car when it came to the crossing. Defendant now insists its motion should have been granted and claims that the testimony of plaintiff upon the question of the negligence of the defendant in failing to have a man and a light upon the head end of the first car of the train is purely negative, and made no issue for a jury upon the question of negligence. It is conceded that defendant's train in backing over this street crossing in the nighttime should have been guarded in some manner at its rear, and the defendant claims that it was guarded by a lighted lantern held by one of the brakemen on the head of the first car approaching the crossing. This made a clear question of fact for the jury. The testimony of plaintiff cannot be said to be negative. He slackened his speed to a reasonable rate, and he looked both ways before, and was still looking, when he drove upon the track. He says positively that there was no light, and that he saw no train. Assuming he was telling the truth, he could do no more than he did do to ascertain if a train were approaching.

It must be borne in mind that it was a very dark night, and while there was no obstruction to his view along the track, still he could not have seen the train if it were unlighted, and it is equally true that had there been a light on the train, as there should have been, he would have seen it. These facts are not similar to the facts in those cases where the view was unobstructed by darkness or by objects, and where it was physically impossible to have looked and not have seen the approaching train. Plaintiff's wife also gave positive testimony that she looked continuously until they were upon the tracks, and that she saw no train. Both plaintiff and his wife did everything possible by way of looking to inform themselves

as to the approach of a train, and their testimony is positive when they state they saw no train and no light.    Neither did they hear the approach of a train. The mind of plaintiff was intent upon ascertaining if a train were approaching on the defendant's track. If he slackened his speed and looked for the train or the warning light repeatedly, as he says he did, he must have also used his sense of hearing to assist him in determining the existing condition of affairs.

The instant case falls within the line of authorities discussed by Mr. Justice FELLOWS in *Lambert* v. *Railway Co.,* 209 Mich. 107, which holds the evidence sufficient to make a case for the jury.    This plaintiff claims he looked most carefully, and his mind and attention were upon the crossing.    The negligence of the defendant as well as his contributory negligence were questions of fact, and the court clearly and properly submitted them to the jury.    *Mills* v. *Waters,* 198 Mich. 637.

Other assignments of error are raised by the defendant, and counsel in their brief insist that while they are not discussed they are not abandoned.    We have examined them and find that for the most part they merge in those here discussed. · Those complaining of the court's instructions have been examined, and under the holdings here, we find the court properly instructed the jury.    Judgment is affirmed, with costs to plaintiff.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.