CARL HENDRICKSON v. GREAT NORTHERN RAILWAY COMPANY.[1]

March 4, 1927.

No. 25,846.

**Whether trainmen and truck driver were negligent, questions for jury.**
    Defendant's negligence and the contributory negligence of the driver of plaintiff's automobile, wrecked in a collision with defendant's train, were for the jury.

    Railroads, 33 Cyc. p. 1104 n. 32, 33; p. 1106 n. 38; p. 1116 n. 90.

Defendant appealed from an order of the district court for Grant county, Flaherty, J., denying its alternative motion for judgment or a new trial. Affirmed.

*F. G. Dorety, A. L. Janes,* and *Fletcher Rockwood,* for appellant.
*T. J. Mangan* and *F. C. Anderson,* for respondent.

[1]Reported in 212 N. W. 600.

HOLT, J.

Appeal by defendant from an order denying its motion in the alternative for judgment non obstante or a new trial.

Plaintiff sued to recover damages for a motor truck, wrecked in a collision with defendant's train at a grade crossing a few hundred feet northwest of the flag station Charlesville, near Tintah, Minnesota. The accident occurred on October 3, 1924. The complaint simply alleged that defendant so negligently managed and ran its train across a public crossing as to strike and completely wreck the truck. The defense was the negligent failure of the driver of the truck to use his senses to ascertain the approach of the train.

The main controversy at the trial was whether it was so dark as to require the headlight of the locomotive to be lit at the time the train approached and passed through Charlesville. There was also the usual conflict of testimony as to whistle and bell signals. That is, some of plaintiff's witnesses, in a position to hear, testified they did not hear the signals, while no doubt the preponderance was that they were given. All agree that a moment before the collision the whistle shrieked, but disaster was then unavoidable. The fact upon which the verdict must rest is that it was so dark that the oncoming locomotive with the headlight unlit could not be seen by the driver of the truck when it was his duty, in the exercise of due care, to look. On this point there was irreconcilable conflict in the testimony. For the plaintiff, witnesses testified that the train passing within 50 feet of an observer some three or four minutes before reaching Charlesville could barely be seen when directly opposite; that it was a dark evening, a heavy cloud coming up in the west which, in about an hour, brought a shower; and that drivers of automobiles were compelled by the darkness to turn on the lights on the vehicles before the collision took place. On the part of defendant, witnesses asserted that it was light enough to see the train and the smoke of the locomotive for two or three miles before it reached Charlesville; that, though the sun was under a cloud just about the time of the collision, it had not set, and some minutes thereafter was visible; and that those driving automobiles had no need of lights thereon until after the accident.

Upon this conflicting testimony two juries have found defendant negligent and the driver of the truck free from negligence. The last verdict has the approval of an experienced judge; and, under the well established practice, it is not for this court to determine that the witnesses for plaintiff were mistaken or falsified rather than those for defendant. It cannot be held by a court that the testimony supporting the pivotal fact in the verdict is demonstrably false. The train was admittedly late and it was close to sundown. The evidence was not such that the court could positively determine the exact time of the collision, to say nothing of the condition as to light or darkness. There are extremely many things that bear upon the visibility of objects about sundown. Defendant was not entitled to a directed verdict.

The order is affirmed.

STONE, J. (dissenting).

I dissent, but not upon any issue peculiar to these crossing cases. With respect to them, some of my views are not concurred in by a majority of the court and I consider myself bound accordingly. But there are two features of this decision which appeal to me as important and with respect to which 1 could not be frank without expressing the reasons for my disagreement.

Obviously, as said by Mr. Justice Holt, the testimony upon which the verdict must rest is that to the effect "that it was so dark that the oncoming locomotive with the headlight unlit could not be seen by the driver of the truck when it was his duty, in the exercise of due care, to look." To sustain the verdict upon that theory we must hold worthy of credit testimony which is characterized by the statement of one witness that the train could not have been seen by an observer fifty feet from it. The whole country in the vicinity of the crossing is flat and there were no hills or trees behind the train to lessen normal visibility. It was before sundown and, cloudy as it may have been, that sort of testimony so far passes the limits of credibility and reasonableness that I think it should be rejected. Of course, if it be rejected, there is no basis for the verdict. It is a typical case, it seems to me, where this court is following what I

think is a too common practice of sustaining verdicts and findings too, by merely holding in a sort of offhand fashion that there is room for a reasonable difference of opinion—nobody however taking the pains to point out with particularity any reasonable ground for that supposedly reasonable view upon which the result must be sustained if at all. Plainly there cannot be two reasonable views of the same evidence unless there is a reasonable ground for each of them. So no court should sustain a verdict or finding by saying merely that there is room for a difference of opinion on the facts. That conclusion is not sustained, logically or legally, until there is found and stated a reasonable basis in the evidence for that view of it upon which the result is made to rest.

The case illustrates another thing which to me is objectionable. Nothing is more common to the experience of the bar than to have a trial judge rule against his own judgment of the issue because alone of the view which he thinks this court will take of the matter on appeal. The deference to the decisions of the appellate court thus evidenced is, of course, commendable. But when the circle is closed in such a case, by this court in turn basing its decisions upon the reluctant view so taken by the trial judge, the process becomes dangerous in effect and indefensible in logic. In that way case is put upon case and the process so far continued that in time the entirely correct principle which established the first precedent is lost sight of and the final result goes far beyond anything that the principle itself could ever be brought to justify.

In this case, the learned trial judge denied the motion to direct a verdict for defendant because of the contributory negligence of the plaintiff, not because on his own notions of the law it should not have been granted, but because he felt that this court would not sustain him on appeal. Yet our opinion is being put in part upon the "approval" of the verdict by the trial judge. He said, in disposing of the motion to direct a verdict:

"The rule read by counsel [for defendant], I think, is the rule; but recently the supreme court of this state has gone very far, holding that evidence such as that in this case should go to the jury

\* \* \* I think myself that perhaps the court has gone very far in the direction of sustaining verdicts based on very questionable testimony. \* \* \* Without those decisions, I should say that the plaintiff was shown to be unquestionably negligent; but the supreme court, which makes [sic] the law, \* \* \* holds that evidence very similar to this would make a case for the jury. \* \* \* I do not know how a person could be shown to be guilty of negligence [under the decisions so referred to] unless he stood on the track and walked into the train \* \* \* the motion for a directed verdict will be denied."

The last of the cases so referred to below are, probably, Turner v. M. St. P. & S. S. M. Ry. Co. 164 Minn. 335, 205 N. W. 213, and Montcalm v. G. N. Ry. Co. 167 Minn. 135, 208 N. W. 539. I agree with the characterization of them above quoted, but all that is immaterial here except as it introduces this very pertinent consideration.: How in the light of his observations have we the right to say this verdict has the "approval" of the learned trial judge? The tendency of modern case law to build at the start on a good foundation of established principle, but in the end to extend the structure to an extent not supported by the reason of the rule or any practical application of it, is bad enough. But how much worse it is, after a trial court has followed, protestingly and disapprovingly, a decision of an appellate court, for the latter to seize upon such a reluctant following as added justification for again applying the rule of the decision so questioned. That, I submit, is what is being done here.

QUINN, J. (concurring).
I concur in the dissent of Mr. Justice Stone.