237 P.2d 1041

STOWERS et al. v. UNION PAC. R. CO.

No. 7784.

Supreme Court of Idaho.

Nov. 15, 1951.

T. Harold Lee, Rigby, and W. Kent Naylor, Idaho Falls, for appellants.

Bryan P. Leverich, Salt Lake City, Utah, L. H. Anderson and E. H. Casterlin, Pocatello, for respondents.

**THOMAS, Justice.**

This action was brought by the children of Hazel Vesta Stowars to recover damages for the death of their mother, occasioned by injuries sustained at a grade crossing on a single track line of the Union Pacific Railroad Company approximately one mile north of Rigby, Idaho.

The case was tried before the court with a jury; at the close of all the testimony the jury returned a verdict for the appellants; respondents moved for a new trial and made a motion for judgment notwithstanding the verdict on the ground and for the reason that the evidence showed conclusively that the decedent was guilty of contributory negligence as a matter of law, and that such negligence contributed to her injuries which resulted in her death; the district court denied respondents' motion for a new trial but granted their motion for judgment notwithstanding the verdict, and judgment was accordingly made and entered dismissing the action. This appeal is from the judgment notwithstanding the verdict.

On October 11, 1948, some time between 6:00 and 6:30 P.M. of that day, Eliza Smith, as the driver of a Plymouth four-door se-

dan, with Joseph Smith, her husband, seated in the middle of the front seat, and Hazel Vesta Stowers also seated in the front seat on the extreme right side, left the farm home of Dell Smith at the end of the day after working on a potato harvester on Dell Smith's farm to go to Rigby.

The occupants of the car drove westerly on the private road of the farm for approximately 250 feet to the easterly right-of-way fence of the respondent, then turned left, and drove south approximately 275 feet parallel with the right-of-way fence until they reached an open gate entering the railroad right-of-way where the road crossed the single track at right angles.

Before entering the gate Eliza Smith stopped the car to clean her glasses, then drove through the gate on to the right-of-way and stopped again, either approximately 50 feet from the track (as Joseph Smith testified), or some 3 or 4 feet distant from the first rail of the track (as Mrs. Smith testified); at this second stop Mrs. Smith looked to the south and to the north along the track, which was straight for some distance in either direction, but saw no train approaching or heard a bell ringing or a whistle blowing, or any other warning signal; Mrs. Smith then asked Mr. Smith if he could see anything approaching on the track; Mr. Smith then looked and did not see anything and replied that he couldn't trust his own eyes, and he then turned to the decedent and asked her if she could see anything coming; the decedent looked and

stated that the way was clear and that she couldn't see anything; the little window next to the decedent was partially open but no other windows were open and there was no radio in the car.

Mrs. Smith then shifted to low gear and proceeded to cross the track at about 10 miles an hour; the train was approaching from the north at about 30 miles an hour, and just as Mrs. Smith drove to the first rail the car collided with the engine and the ensuing injuries, resulting in the death of decedent, followed.

When the car entered the railroad right-of-way, which was 50 feet from the tracks, the train approaching from the north was about 150 feet from the crossing on an elevated grade.

All of the witnesses fixed the time of the accident as somewhere between 6:00 P.M. and 6:30 P.M.; in many other material respects, particularly with reference to the visibility and the warning signals, there is sharp conflict; the witnesses for the appellants all testified that the sun was down; some of them testified that it was dusky and approaching near darkness, while at least one witness testified that it was actually dark; the witnesses for appellants further testified that they did not see a headlight burning on the engine, that they did not hear a bell ringing or a whistle blowing, and that the lights on the automobile were burning; on the other hand, the witnesses for the respondents, which consisted of the members of the train crew and one other witness, testified that it was daylight and that the sun had not set, and that the visibility was good; the members of the train crew admitted that no whistle was blowing but testified that the headlight was burning and that the bell was ringing and that they saw no light burning on the Smith car. There is testimony that it was windy and dusty on this particular day; there were some trees in the background quite some distance north from the crossing, as portrayed by Defendants' Exhibit No. 2. (See photo on page 92.)

The only issue before this court on the record is the determination as to whether or not Mrs. Stowers was guilty of contributory negligence as a matter of law so as to warrant the judgment notwithstanding the verdict.

The respondents contend that from the evidence of the appellants it is conclusively shown that Mrs. Stowers was guilty of contributory negligence as a matter of law for the reason that the engine was only 150 feet away from the crossing at the time the car was approximately 50 feet from the crossing, and that some of the witnesses for plaintiffs testified that they could see for some distance along the track and others, testified that they actually saw the train; that had she stopped and looked she could have seen, and listened she could have heard, the train, and that her failure to reasonably use her senses while in a place of safety constituted contributory negligence as a matter of law because she is

chargeable with seeing what she could have seen had she looked attentively or effectively, and with hearing what she could have heard had she listened attentively and effectively; in this connection it is further urged that it will be presumed that she did not look or listen at all or, if she did, that she did not heed what she saw or heard.

A *motion for judgment notwithstanding* verdict admits the truth of the adversary's evidence and every favorable inference of fact which may be legitimately drawn therefrom. Hobbs v. Union Pac. R. R. Co., 62 Idaho 58, 108 P.2d 841; Department of Finance of State v. Union Pac. R. R. Co., 61 Idaho 484, 104 P.2d 1110; Allan v. Oregon Short Line R. R. Co., 60 Idaho 267, 90 P.2d 707; Manion v. Waybright, 59 Idaho 643, 86 P.2d 181; Hobson v. Security State Bank, 56 Idaho 601, 57 P.2d 685; Claris v. Oregon Short Line R. R. Co., 54 Idaho 568, 33 P.2d 348; Hendrix v. City of Twin Falls, 54 Idaho 130, 29 P.2d 352; 30 Am.Jur., Sec. 58, p. 849.

Under this principle of law it must be assumed as a fact that the respondents gave no cautionary or warning signals of any nature and that no headlight was burning on the engine, and furthermore that it was dark, windy and dusty and that the occupants of the car stopped, looked and listened from a point of safety and did not see the approaching train.

It is the duty of a railroad company enjoined by statute to ring a bell or blow

a whistle in approaching a railroad crossing and failure to do so is negligence per se. Department of Finance of State v. Union Pac. R. R. Co., supra; Allan v. Oregon Short Line R. R. Co., supra; Hobbs v. Union Pac. R. R. Co., supra; Judd v. Oregon Short Line R. R. Co., 55 Idaho 461, 44 P.2d 291; Wheeler v. Oregon Railroad & Nav. Co., 16 Idaho 375, 102 P. 347; Fleenor v. Oregon Short Line Railroad Co., 16 Idaho 781, 102 P. 897.

■ A traveler has a right to assume that a railroad company will give the required signals of the approach of the train so that the traveler by looking and listening, and stopping so to do, when required by statute or otherwise necessary, before crossing the tracks, may be able to discover, while in a place of safety, the approach of the train. Department of Finance of State v. Union Pac. R. R. Co., supra; Whiffin v. Union Pac. R. R. Co., 60 Idaho 141, 89 P. 2d 540.

■ Through a long and unbroken line of decisions this court has held that where the evidence on material facts is conflicting, or where on undisputed facts reasonable and fairminded men may differ as to the inferences and conclusions to be drawn, or where different conclusions might reasonably be reached by different minds, the question of negligence, contributory negligence and proximate cause is one of fact to be submitted to the jury and not a question of law for the court; if, upon all the facts and circumstances, there is a reasonable chance or likelihood of the conclusions of reasonable men differing, the question is one for the jury. Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651; Ford v. Connell, 69 Idaho 183, 204 P.2d 1019; Cogswell v. C. C. Anderson Stores Co., 68 Idaho 205, 192 P.2d 383; O'Connor v. Meyer, 66 Idaho 15, 154 P.2d 174; Mason v. Hillsdale Highway Dist., 65 Idaho 833, 154 P.2d 490; Department of Finance of State v. Union Pac. R. R. Co., supra; Adkins v. Zalasky, 59 Idaho 292, 81 P.2d 1090; Bennett v. Deaton, 57 Idaho 752, 68 P.2d 895; Call v. City of Burley, 57 Idaho 58, 62 P.2d 101; Denton v. City of Twin Falls, 54 Idaho 35, 28 P.2d 202; Carr v. Wallace Laundry Co., 31 Idaho 266, 170 P. 107; Fleenor v. Oregon Short Line Railroad Co., 16 Idaho 781, 102 P. 897; see also Scott v. Pacific Power & Light Co., 178 Wash. 647, 35 P.2d 749.

The reason for such rule is appropriately set forth in the case of Adkins v. Zalasky, supra, and later repeated in the case of Hobbs v. Union Pac. R. R. Co., supra, in the following language [62 Idaho 58, 108 P.2d 848]: "One reason for the rule that the existence of negligence, or contributory negligence, is not generally a question for the judge is that a jury is composed of members of various ages, occupations and experiences, and is in better position to determine what a reasonably prudent person would do, under stated circumstances, than is a trial judge or an appellate court. It is well known that some people react more quickly, and more intelligently, to impending

danger than do others; that old people are apt to be more cautious than are young people, and that human judgments are as diversified as are human beings. Therefore, the best way to get a just determination, as to whether a man or woman acted 'as a reasonably prudent person would have acted under like circumstances,' is to submit the question to a jury, and get the benefit of the combined opinions of twelve persons on it. It is only when there can be but one possible answer, reasonably made, to that question that a trial judge, or an appellate court, should assume to decide it. It is a human weakness for one to say, when considering the conduct of others, 'I would not have done that,' or 'I would have done this,' and to say it in such a way as to indicate that what he would have, or would not have done settles the proper procedure for all mankind. The method of deciding disputed facts, or of drawing just conclusions from those not in dispute, by submitting the question to a jury, composed of individuals of various walks of life, ages and experiences, is the best known means of establishing the facts which, in the administration of justice, must form the basis of a judgment."

The question of the existence of negligence and contributory negligence only becomes a question of law when the evidence is susceptible of no other reasonable interpretation than that the conduct of the injured party contributed to his injury and that because of his negligence and carelessness he did not act as a reasonably prudent person would have acted under the circumstances. Hobbs v. Union Pac. R. R. Co., supra; In re Estate of Randall, 58 Idaho 143, 70 P.2d 389; Bennett v. Deaton, supra; Williamson v. Neitzel, 45 Idaho 39, 260 P. 689; Donovan v. City of Boise, 31 Idaho 324, 171 P. 670.

It is the contention of the respondents that the evidence of appellants standing alone, accepted as being true and drawing the most favorable inferences therefrom, is susceptible of but one interpretation, by reasonable men, that is, that the decedent did not act as a reasonably prudent person would have acted under such circumstances and that her conduct was negligent and that it caused or contributed to her death and for that reason the question of contributory negligence is not one of fact for the jury but one of law for the court.

In this respect the respondents urge that under the principle set forth in the Whiffin case, supra, and in Testo v. Oregon-Washington Railroad and Navigation Company, 34 Idaho 765, 203 P. 1065, the decedent failed to look and listen from a point where her observation was effective and to effectively look and listen, and that under the facts as developed by the appellants' own case it will be presumed that she did not look or listen at all or, if she did, that she did not heed what she saw or heard for the reason that she was bound to see the train, which was only 150 feet away from the crossing when the car was 50 feet away from the crossing, had she attentively and effectively

looked, and that no person will be heard to say that he or she looked and did not see the approaching train under such facts.

It is contended under the testimony of certain witnesses for plaintiffs, even admitting every favorable inference of fact which may be legitimately drawn therefrom, yet it is susceptible of no other interpretation by reasonable minds than that the conduct of decedent was that of a negligent person and that such conduct contributed to and was the proximate cause of her injuries, and that where this is true the question of contributory negligence is for the court and not for the jury.

To better evaluate the contention of respondents in this respect, pertinent portions of such testimony of the witnesses are set forth as follows:

Eliza Smith:

"Q. Now, when you stopped the second time what did you do? A. Well, I looked south, and then I looked north, and I couldn't see no lights or nothing, so I turned to my husband and asked him if he could see anything; and he looked, and he said that he couldn't see anything; and then he asked Mrs. Stowers if she could see anything, and she said that everything was clear. (f. 61)

"Q. Isn't it true, Mrs. Smith, that from the point where you stopped there you could look way to the north, up to where those trees cross (indicating), without having your vision obstructed? A. Well, I don't know as to that. (f. 85)

"Q. But, from where you stopped before you—the second stop before you went on the track, you could see up north along the track for a long ways, couldn't you? A. Yes sir. (f. 87)

"Q. Now, you say you didn't see anything coming from the north? A. No sir.

"Q. When you didn't see anything, did you have any conversation with Mr. Smith? A. I just asked him if he could see anything, because it was so dusty.

"Q. And what did Mr. Smith reply to you? A. Well, he said that he didn't see anything, but his eyes was so full of dust, and he turned to Mrs. Stowers and asked her if she could see anything. (f. 88)

"Q. And then asked Mrs. Stowers to look? A. Yes sir.

"Q. And did Mrs. Stowers look? A. Yes, she looked.

"Q. And was there anything to obstruct her view, as she looked to the north? A. I don't think so. (f. 89)

"Q. Did Mrs. Stowers then make any report to you as to what she saw? A. She said, 'The way is clear.'

"Q. And when she said 'The way is clear,' did you depend on that, or not? A. Yes sir.

"Q. And what did you do then? A. Well, I started up then.

'Q. And were you in high gear, low gear, or intermediate? A. I was in low gear. (ff. 90, 91.)

"Q. Isn't it a fact, Mrs. Smith, that because of the condition, and the fact that there were three of you in the front seat, that you depended almost entirely on Mrs. Stowers to tell you if the track was clear? A. Well, I didn't depend on them, exactly, because I looked myself and couldn't see. And I could see—well, you couldn't see too far up, on account of the dust. (ff. 103–105)

"Q. Now, why did you stop the second time, Mrs. Smith? A. Well, to make sure that—I wanted to look and see if I could see a train coming. (f. 111)

"Q. So, what you mean to say is that you looked for a train, but that you didn't see it? A. Yes sir. (f. 114)"
Joseph R. Smith:

"Q. What was the condition of the sun at that time? A. It was sun down, nearly dark. It was just so dark you couldn't only see just a few feet ahead of you, and it was also awful windy and dusty. (f. 235)

"Q. Did you look yourself? A. Yes, I looked out, too. (f. 330)

"Q. So that when you stopped, as you said, when—as you went through the gate, and looked up and down the track, there was nothing to the north which would obstruct your view? A. No sir, only the dust.

"Q. Just the dust. A. The dust was as high as the top of the train. They all said that—(f. 334)"

It is further contended that some of the witnesses for plaintiffs testified that they could see the train; the only testimony in this connection is that of Dell Smith, who was at his farm some 250 or 300 yards east of the crossing, who testified that after the collision he saw the train rolling or moving, and, of course, the testimony is that after the collision the lights of the train were on; furthermore, his position could well have been more advantageous than that of the occupants of the car, yet he did not testify that he saw the train until after the collision; Nell Elsor, who was on the front porch of the farm home of Dell Smith, testified that she knew it was a train because of the light reflected from the cars on the highway west of the track (something the occupants of the car, of course, could not see from their position of observation), and that she only saw it after the collision and before the train had stopped; Roy Elsor, who likewise was in the Dell Smith yard between the house and the celler, testified that he noticed the train at the time the car was stopped, and saw that she was going to hit; he saw the train when it was at about the same distance from the crossing as the car was; Jessie Olson, who lived on the west side of the tracks and across the highway from the Dell Smith home, testified that from her kitchen window, after the collision, she saw the train; all the testimony in the record is to the effect that the lights of the train were on after the collision; the points from which all

of these witnesses made observation and the time of such observation, except Roy Elsor, might well explain why they were able to see the train; the evidence of both Mr. and Mrs. Smith, interpreted in the light most favorable to the plaintiffs, and all favorable inferences that must be drawn therefrom, would not warrant the conclusion that the decedent was negligent as a matter of law.

In determining the question of contributory negligence, due care or ordinary prudence under the circumstances is the only test. The presence or absence. of contributory negligence must be judged by the conditions, circumstances and surroundings at the time of the accident and whether under such the person acted as a reasonably prudent person would have acted. Scott v. Pacific Power & Light Co., supra. An appropriate statement in this connection was set forth in the Scott case in the following language [178 Wash. 647, 35 P.2d 755]: "After an accident happens, it is always easy to see many ways by which it could have been avoided, but such considerations do not usually afford a correct test of negligence. A victim of an accident is entitled to have his conduct judged by the circumstances surrounding him at the time of the accident by the conditions as they appeared to one in his then situation, and, if his conduct when so judged appears to be that of a reasonably prudent person, he cannot be said to be guilty of negligence".

The decisions of this court and of the courts of other states which require that the traveler must look attentively or effectively up and down the track before attempting to cross when a train is approaching stress that the traveler is chargeable with what he could have seen had he so looked and with hearing what he would have heard had he so listened; in other words, where he looks and listens but does not see or hear the approaching train *which is in full view,* Lawrence v. Denver & R. G. R. Co., 52 Utah 414, 174 P. 817, or which is *plainly visible,* Smith v. Oregon Short Line R. R. Co., 47 Idaho 604, 277 P. 570, it will be presumed that he did not look or listen at all or, if he did, that he did not heed what he saw or heard; such a rule is predicated upon the assumption that by the exercise of ordinary care, the effective use of his senses, he could have seen the approaching train which was in full view or plainly visible.

It is ordinarily a question for the jury whether a person injured exercised due care in looking and listening where his view or his hearing is obstructed by darkness or dust or wind, or by a combination of two or more of these conditions. 52 C.J. Sec. 2067, pp. 499–500.

Where at the time the traveler was injured on a railroad crossing it was night or so dark it was possible that although he looked he could not have seen the approaching train, it could not be said as a matter of law from the physical facts that

he did not look when he testified that he looked and saw no train. Chicago, R. I. & P. Ry. Co. v. Batsel, 100 Ark. 526, 140 S.W. 726.

Whether the occupants of a car approaching the railroad crossing could see the locomotive in the nighttime when no headlight was burning, or hear it when no whistle was blowing or bell ringing, the travelers having stopped and looked for a headlight or any indication of the presence of the train, and listened for the bell or whistle, a prima facie case of the exercise of ordinary care is made out and a question of fact for the jury is presented. Chapman v. Baltimore & Ohio R. R. Co., 340 Ill.App. 475, 92 N.E.2d 466.

In the Chapman case, supra, a verdict was rendered for the plaintiffs and judgment entered; thereafter upon motion the court entered a judgment for the defendant notwithstanding the verdict; in that case, as in the case at bar, there was testimony that no headlight was burning nor any warning signals given; in answer to the contention of the defendant railroad that since the plaintiffs had a good view which was unobstructed, as such contention is likewise made in the case at bar, they could at least have seen the numeral lights on the side of the engine had they looked, because they were fifteen feet from the track traveling 15 miles an hour and the train, traveling 40 to 50 miles an hour, was only twenty or thirty feet from the crossing; the court pointed out that the travelers stopped, looked and listened but that they saw no light and heard no sound, and that since their view of the track was unobstructed it was a legitimate inference in their favor that no headlight was burning and no warning signal given, and that whether they could see any numeral lights was for the jury because the court itself could not say whether reasonable men would agree that such numeral lights could have been seen in time to avoid the collision.

The rule which charges the traveler with seeing what he could have seen if he had looked, and with hearing what he could have heard if he had listened, is without application where it cannot be said as a matter of law that the traveler is presumed to have seen the locomotive where the vision or hearing is impaired by darkness, in itself an obstruction; in such instances the question of contributory negligence cannot properly be withdrawn from the jury. Evans v. Denver & R. G. W. R. R. Co., 74 Utah 201, 278 P. 809; Hendrickson v. Great Northern Ry. Co., 170 Minn. 394, 212 N.W. 600; Miller v. Manistique & L. S. Ry. Co., 234 Mich. 184, 207 N.W. 809; Lozzi v. Pennsylvania R. Co., 152 Md. 508, 137 A. 293; in this same respect in the case of St. Louis, I. M. & S. Ry. Co. v. Johnson, 74 Ark. 372, 86 S.W. 282, 283, the court, in concluding that the question of contributory negligence of the traveler was one for the jury and not for the court, made this pertinent statement:

**99**

"The more serious question is Johnson's failure to see the train. The requirement to be constantly on guard in crossing the track is not met by looking and failing to see what is plain to be seen. If this had occurred in broad daylight, it is clear that his failure to see what could have been seen by vigilance would have defeated him. His testimony shows it was night. Other testimony puts it in that uncertain light when more the outline than the substance of objects is discernible."

This court has recognized that in instances where the circumstances are such that it would have availed nothing in preventing the injury if the party had looked and listened, such is not required; it is only where it appears from the evidence that he might have seen had he looked or might have heard had he listened, that his failure to look and listen will necessarily constitute negligence; Wheeler v. Oregon R. R. & Nav. Co., 16 Idaho 375, 102 P. 347; where this rule is recognized, as it is in Idaho, then it follows that where a party does stop, look and listen, an act which renders looking and listening effective, 44 Am.Jur., Sec. 546, pp. 795–798; Wallenburg v. Missouri Pac. R. Co., 86 Neb. 642, 126 N.W. 289, 37 L.R.A.,N.S., 135; Dickinson v. Erie R. R. Co., 81 N.J.L. 464, 81 A. 104, 37 L.R.A.,N.S., 150, and the circumstances reveal that because of darkness of the night and shadows from trees in the background, the absence of a headlight burning on the locomotive and the failure to give any warning signal, it would have availed the traveler nothing to prevent the injury, then there could be no showing of contributory negligence as a matter of law.

The place from which one must look and listen where such is required in order to act as an ordinarily prudent person would act, does not require that one look and listen from a place which may be the most advantageous point, especially where the place selected is the one customarily used by the public for that purpose. Bruggeman v. Illinois Cent. R. Co., 147 Iowa 187, 123 N.W. 1007, Ann.Cas.1912B, 876; Wallenburg v. Missouri Pac. R. Co., 86 Neb. 642, 126 N.W. 289, 37 L.R.A.,N.S., 135; furthermore the question of whether or not the point selected was a proper one is usually one of fact for the jury. Wallenburg v. Missouri Pac. R. Co., 86 Neb. 642, 126 N.W. 289, 37 L.R.A.,N.S., 135.

In the Whiffin case as well as in the Testo case, the accident occurred in the daytime at a point where the view of the track was obstructed by cars on another track, and the court in each of those cases held that contributory negligence as a matter of law was shown because there was a failure to make reasonable use of the senses of looking and listening from a point where the observation would be reasonably effective, thus resulting in the failure to exercise ordinary care. Both of these cases are distinguished from the present case; in those cases reasonable

caution would forbid the traveler from going forward; here the travelers used the faculties available to them to the fullest extent under the circumstances; in the case at bar there was assurance, to some extent, in the thought that the train would not be operated in the nighttime without the headlight burning and without blowing a whistle and ringing a bell when approaching a crossing; any reasonable traveler might take these factors into account; the ordinary safeguards failed them, and the ordinary safeguards are those exacted of a reasonably prudent person.

In the case at bar it cannot be said for the purpose of this appeal that as a matter of law the decedent was guilty of contributory negligence which caused or contributed to her death.

The judgment is reversed and the cause remanded with instructions to the court below to reinstate the judgment on the verdict.

Costs to appellants.

GIVENS, C. J., and PORTER and TAYLOR, JJ., concur.

KEETON, Justice (dissenting).

The question for determination in this matter is not the negligence of the respondent company, but whether or not the deceased Mrs. Stowers was guilty of contributory negligence.

According to the undisputed facts, she was asked by the driver of the car whether there was a train approaching, and after looking advised that the way was clear. The driver of the car then drove ahead and ran into a passing train that could have been only a short distance away when Mrs. Stowers looked up and down the track.

By her actions she not only placed herself in danger, but the other occupants of the car as well. Her contributory negligence caused her death.

If she looked and did not see she should not have advised the driver that all was clear and, in effect, directed the car to proceed.

A railroad track is in itself a sign of danger, and those entering upon a track where a train is likely to be must look and listen, and stop if necessary, for their own protection. A violation of this duty is negligence.

Hence I do not concur in the majority opinion, and am of the opinion that the judgment notwithstanding the verdict should be affirmed.