**UNION PACIFIC RAILROAD COMPANY, Appellant,**

v.

**John W. JARRETT, etc., Appellee.**

**No. 21136.**

United States Court of Appeals Ninth Circuit.

Aug. 8, 1967.

E. C. Phoenix, Pocatello, Idaho, Bryan P. Leverich, Salt Lake City, Utah, for appellant.

Bruce Bowler, Boise, Idaho, for appellee.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

Appellants Union Pacific and its employee, Fletcher, appeal from a judgment in a wrongful death action brought in diversity by the parents of the deceased, Catherine Joan Jarrett. The action was based upon the Idaho Wrongful Death Act, Idaho Code § 5–310. The other defendant against whom judgment was entered was Alma Nelson, as administratrix of the estate of Herbert E. Nelson. Nelson was the driver of the car involved. He, along with Catherine Jarrett and another passenger in the car, was killed in the accident.

Trial was to a jury, which returned a verdict for appellees, awarding a total of $60,000. Appellants filed a motion for judgment notwithstanding the verdict or for a new trial. This appeal is from the judgment and from the denial of the motion. The administratrix of Nelson's estate has not appealed.

Appellants specify the following errors: (1) The trial court erred in failing to grant appellants' motions for a directed verdict, for judgment notwithstanding

the verdict, and for a new trial. (2) The trial court erred in failing to give a requested instruction. (3) The trial court should have either reduced the damages or granted a new trial on the issue of damages.

We first consider, together, the trial court's rulings on directed verdict and judgment notwithstanding the verdict. The inquiry on appeal is essentially the same with regard to each: Was there sufficient evidence to present a jury question? Appellants' specific contention is that there was no substantial evidence from which the jury could conclude that appellants' negligence was a contributing proximate cause of the accident. We are of the opinion that there was more than enough such evidence. We, of course, view the evidence in the light most favorable to appellees. See Moran v. Washington, Idaho & Montana R.R. Co., 9 Cir., 1960, 279 F.2d 935; Ralph v. Union Pacific R.R. Co., 1960, 82 Idaho 240, 351 P.2d 464.

At about 8:55 P.M. on February 15, 1964, Herbert Nelson picked up Catherine Jarrett in his car to drive her from the Jarrett home on South Wilson Street in Boise to the Nelson home to babysit with the Nelson children. A Mr. Bradbury also was in the car; he rode in the front with Nelson, while Catherine was in the back. Nelson drove east on Grover Street to Roosevelt Street and turned north toward the Nelson home. It was snowing lightly and the streets were icy. Nelson had been drinking; after the accident, his blood alcohol content was measured at 149 mg. per cent.[1] There was expert testimony that at that level a man is "definitely intoxicated." But there was also testimony that Nelson did not appear intoxicated before departing from the Jarrett home.

Nelson proceeded north on Roosevelt Street a few blocks, approaching the intersection of Alpine Street and of Union Pacific's tracks and Roosevelt. Alpine runs parallel with the tracks. Its southern curb line is about 70 feet south

from the first track. As Nelson approached the intersection, there were, to his right, first, a circular yellow and black railroad crossing sign, 216 to 221 feet south from the first track, next, at the southeast corner of the Roosevelt and Alpine intersection, 106 feet south of the first track and 36 feet south of the southern curb of Alpine, a standard red octagonal stop sign, and finally, across Alpine and 25 feet south of the first track, a white railroad crossing crossbuck sign. From a position at the side of the octagonal stop sign a train approaching from the west would be hidden by a row of large trees growing in a staggered line extending along Alpine Street from the southwest corner of the Roosevelt-Alpine intersection. To get an unobstructed view of the western approach along the tracks it was necessary for one to be at least 20 to 25 feet beyond the stop sign toward the tracks.

As Nelson approached the intersection and crossing, Union Pacific's passenger train number 12 with engineer Fletcher at the controls, was proceeding east toward the Boise stop, about one and a half miles beyond the Roosevelt crossing. The train's speed as indicated by the speed tape admitted into evidence was decreasing from about 78 miles per hour; its speed at collision was about 70 miles per hour.

One Wood, who was ahead of Nelson, crossed the tracks. When actually on the tracks, Wood looked at the oncoming train and was surprised that it was so close. He did not hear a whistle or bell and did not see a flashing light. He did see the headlight of the train and he heard its rumbling as it approached. A Mrs. Van Engelen was driving north on Roosevelt about 250 feet behind Nelson. She was unaware of the approaching train; she heard no whistle or bell. Nelson's brake light flashed on for an instant as he skidded to the right on the incline near the crossbuck sign; his car then went to the left onto the track and the train struck it. All three occupants of the car were killed instantly.

---

1. We quote the terms of the laboratory report, plaintiff's exhibit number 33.

We have no doubt that under the law of Idaho the jury had sufficient evidence for its finding that the railroad, its employee, Fletcher, and Nelson were all negligent. The train was traveling at a very high rate of speed—at least 10 miles per hour faster than the railroad's own speed rule for the crossing.[2] And in the circumstances of its approaching the Roosevelt crossing at night the jury was free to find that the excessive speed was negligent even apart from the railroad's failure to sound a whistle or bell warning.

Idaho law requires automobile drivers approaching a rail crossing to stop, look and listen effectively from a position of safety. Whiffin v. Union Pacific R.R. Co., 1939, 60 Idaho 141, 89 P.2d 540; Yearout v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co., 1960, 82 Idaho 466, 354 P.2d 759. The jury could find that a driver approaching the Roosevelt crossing would have had his first effective look to the west no sooner than at about 25 feet after he passed the stop sign at Alpine Street. Pulling up to such a position could put him in a precarious position with regard to possible traffic on Alpine. The normal response to this situation would be to wait until no conflict with Alpine traffic was likely and then pull forward to see if a train were coming from the west. With dry street conditions, if a driver in this advanced position saw an approaching train and thought that it would be unsafe to cross, he could either back up out of the way of Alpine Street traffic and wait, or he could pull ahead across Alpine and wait by the crossbuck sign. Wood's testimony, however, indicated that because of the icy streets, a driver on the night in question would not have been able to pull ahead to cross Alpine and stop before getting on the tracks. Thus, the jury could have found that a driver at Roosevelt looking from a position from which he could see the train would be prompted to make a rather quick decision either to pull ahead across the tracks, or try to back up slightly to a safe waiting position.

The jury could have assumed from the railroad's speed limit that a driver would normally estimate an approaching train's speed to be about 60 miles per hour. Looking at an approaching train almost head-on would reveal nothing to contradict such an estimate. The physical layout of the intersection plus the high speed of the train, then, could be enough to induce a miscalculation on the part of a driver at the Roosevelt crossing, and such a miscalculation might well have been irrevocable. It was within the jury's province to charge the railroad with knowledge that a driver approaching the Roosevelt crossing would have to proceed well beyond the stop sign to see down the tracks to the west, and with knowledge that a driver's decision from such a point would be accelerated because of the peculiarities of the intersection. A jury might find that a driver who decided to go ahead under such circumstances was acting negligently, but we cannot say that a jury could not also find that in such circumstances the high speed on the part of an approaching train also amounted to negligence.

When the railroad's failure to sound a whistle or bell is added to the above factors, the jury question is secure. Certainly here, where the warning would have served to alert a driver at the stop sign where visual observation was impaired, the failure to give it was adequate basis for a finding of negligence.[3]

That Nelson so clearly appeared negligent is the basis for appellants' main contention on this appeal. It is asserted that Nelson's negligence was as a matter of law so overwhelming

2. Appellant Fletcher, the engineer, testified that Roosevelt crossing is within the railroad's yard limit and that the time table speed at the crossing was 60 miles per hour.

3. See Yearout v. Chicago, Milwaukee, St. Paul & Pacific R. R. Co., 1960, 82 Idaho 466, 354 P.2d 759. The rule is based on Idaho Code § 62–412.

that any negligence on the part of the railroad could not be considered a proximate cause of the accident. Two well-settled rules of Idaho law are applicable to this question. First, it is not enough for the railroad to argue that its negligence would not have caused the accident had it not been for Nelson's negligence. It is enough if the jury could find that the railroad's negligence was an efficient proximate cause of the accident. See Russell v. City of Idaho Falls, 1956, 78 Idaho 466, 305 P.2d 740; Valles v. Union Pacific R.R. Co., 1951, 72 Idaho 231, 238 P.2d 1154. Second, it is only when, as a matter of law, Nelson's negligence was totally "unforeseen, unanticipated and not a probable consequence" of the railroad's negligence that it would be improper for the jury to find that the railroad's negligence was a proximate cause of the accident. Dewey v. Keller, 1964, 86 Idaho 506, 515, 388 P.2d 988, 993.

■ We are unwilling to say that the jury could not have reasonably found that errors such as Nelson could have been held to have made were foreseeable. The question was one on which reasonable men could differ, and it was for the jury. Dewey v. Keller, supra; Hoffman v. Barker, 1957, 79 Idaho 339, 317 P.2d 335; Valles v. Union Pacific R.R. Co., supra; Stowers v. Union Pacific R.R. Co., 1951, 72 Idaho 87, 237 P.2d 1041.

■■ Appellants have expanded their major point on this appeal—the question of proximate cause—to include an argument that the negligence of Catherine Jarrett was the sole proximate cause of the accident. The short answer is that the burden of proof of any negligence on Catherine's part was upon appellants, and no evidence of her negligence was introduced. See Whiffin v. Union Pacific R.R. Co., supra. Idaho law presumes a deceased to have acted reasonably; and, therefore, the mere fact that Catherine was killed in a negligently operated vehicle cannot give rise to any inference that she was negligent. Positive evidence

of the deceased's negligence is needed to rebut the presumption. See Ineas v. Union Pacific R.R. Co., 1952, 72 Idaho 390, 405, 241 P.2d 1178, 1188.

■ Our next question is the alleged error in the court's ruling on the motion for new trial. The question before the trial court was whether, considering all of the evidence, the verdict was against the clear weight of the evidence. He answered, "No," and we cannot say that he erred. To do so, we would have to say that he was so far in error in his ruling that he abused his necessarily wide discretion. Walker v. Bank of America National Trust & Savings Ass'n, 9 Cir., 1959, 268 F.2d 16, 25. Of course there was evidence favoring the appellants. But a review of the whole record convinces us that the trial judge was well within his discretion in concluding that the verdict should stand.

Appellants' next contention is that the trial judge erred in refusing to give the following instruction:

"You are instructed that if you find from all of the evidence that the collision between the automobile and the train would not have occurred except for the ice on the street, then the ice was the sole proximate cause of the accident, irrespective of the acts of the Railroad Company or its employees, and you must return a verdict for the defendant Railroad Company and its employee."

■ Appellants cite cases in which appellate courts were able to say that as a matter of law icy road conditions were the sole proximate cause of the accident. We recognize that the icy roads were a factor in causing this accident, but we cannot say that they were the sole proximate cause as a matter of law. The Idaho courts have made it clear that it is not open to a defendant to argue that his negligence *must* be irrelevant merely because other factors were necessary to the accident's happening. See Russell v. City of Idaho Falls, supra. The jury was properly instructed

on the relevance of the icy conditions, and was told that it could find the conduct of any, all, or none of the defendants to be a proximate cause of the accident.

 Finally, it is urged that the trial judge should have reduced the damages or granted a new trial on the issue of damages. We have reviewed the evidence and we do not find that the trial judge abused his discretion in refusing to interfere with the jury's determination. The statutory standard is wide; damages are to be awarded "as under all the circumstances of the case may be just." Idaho Code § 5–311. And the question is primarily for the jury. Where no excess appears as a matter of law, the refusal of a trial judge to reduce the award or grant a new trial on damages is not open to review. Hayward v. Yost, 1952, 72 Idaho 415, 242 P.2d 971; Hepp v. Ader, 1942, 64 Idaho 240, 130 P.2d 859.

Appellants cite us to the history of Covey Gas & Oil Co. v. Checketts, 9 Cir., 1951, 187 F.2d 561. In that case this court granted remittitur of a judgment entered in the Idaho District Court. We ordered it to reduce a $35,000 judgment for the death of an 8 year old boy to $20,000 upon the consent of the plaintiffs, or in the alternative to grant a new trial. But this action was taken solely because of the previous action of the state courts and in order to avoid forum shopping. The plaintiffs in *Covey* had originally brought their action in the state courts. See Checketts v. Bowman, 1950, 70 Idaho 463, 220 P.2d 682. A verdict of $40,000 was returned in that action, but the state trial judge ruled that it was excessive and reduced it to $20,000. The state supreme court affirmed the exercise of discretion by the trial judge, but gave the plaintiffs the alternative of accepting the reduction or a new trial. The plaintiffs dismissed the action and brought it again in the federal court as a diversity case. This court followed the lead of the state supreme court which followed the lead of the state trial court. *Covey* is not authority for interfering with the discretion exercised by the judge and jury here.

Affirmed.