**UNION PACIFIC RAILROAD COMPA-NY, a corporation, Appellant,**

v.

**Teles HORMAECHEA and Mary Hormaechea, husband and wife, and Daniel T. Hormaechea, Appellees.**

No. 22869.

United States Court of Appeals Ninth Circuit.

Nov. 10, 1969.

E. C. Phoenix (argued), D. A. Bybee, F. L. Ringe, Pocatello, Idaho, Bryan P. Leverich, Salt Lake City, Utah, for appellant.

Andrew Harrington (argued), Robert Smylie, of Langroise, Clark & Sullivan, Boise, Idaho, for appellees.

Before CHAMBERS and CARTER, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge.

Appellant, Union Pacific Railroad Company, has appealed from a judgment in a diversity action in favor of appellees, Daniel T. Hormaechea, a minor, and his parents, Teles Hormaechea and Mary Hormaechea, for personal injuries sustained by Daniel in a train-automobile collision, and expenses incurred by his parents in treatment for the injuries.

The case was tried before a jury. At the close of plaintiffs' case and again at the close of all the evidence, appellant moved for a directed verdict. Both motions were denied. The jury returned a verdict in favor of Daniel for $10,000 and his parents for $9,396.93. Appellant's motion for a judgment notwithstanding the verdict or for a new trial was denied. This appeal is from the judgment and denial of the motion.

Appellant has specified as error the denial of the three motions and contends on appeal (1) that appellees failed to establish any negligence on the part of the Union Pacific as a proximate cause of the collision, and (2) that the evidence shows that Daniel T. Hormaechea was negligent as a matter of law and that his negligence proximately caused or contributed to the accident.

---

* Honorable William J. Jameson, United States Senior District Judge, Billings, Montana, sitting by designation.

The inquiry with respect to each of the motions is essentially the same: "Was there sufficient evidence to present a jury question? * * * We, of course, view the evidence in the light most favorable to appellees". Union Pacific Railroad Company v. Jarrett, 9 Cir. 1967, 381 F.2d 597, 599.

The collision occurred about 3:00 A.M. on April 12, 1964, on Curtis Road where it is crossed by the Boise Branch track of Union Pacific. Curtis Road is a broad, paved, busy two lane road running north and south near the edge of Boise.[1] The Union Pacific spur track runs from northeast to southwest at a 41 degree 30 minute angle. The automobile driven by Hormaechea was traveling north. The Union Pacific train, consisting of a locomotive, coal car and caboose was traveling southwest.

Hormaechea was accompanied by Jim Fisher and two girls. The other three were killed in the collision and Hormaechea was severely injured. Hormaechea, a student at the University of Idaho, was home on spring vacation. With several friends, including Fisher, he had attended an afternoon wedding. Following the wedding there were various parties and get-togethers, with several hours of "socializing", talking and drinking beer.[2] The last party began about midnight when several couples gathered at a friend's trailer house. About 2:30 A.M. Hormaechea, Fisher and their dates left the trailer house to take the girls home.

The weather was cold and misty.[3] Hormaechea took the Curtis Road because it was the most direct route to the girls' homes. He had traveled Curtis Road before and was familiar with the crossing, although he testified that he had never seen a train pass the crossing.

The main line of Union Pacific crosses Curtis Road about two tenths of a mile south of the spur track where the collision occurred. Between the main line and spur track there is an empty field on the west side of Curtis Road. On the east side is a petroleum tank farm with several large storage tanks for gasoline. The tanks were from 40 to 50 feet high and 80 to 100 feet in diameter. The tank nearest Curtis Road is 34 feet from the edge and 54 feet from the center of the road and approximately 200 feet from the spur crossing. There is a dirt dike 18 inches high, measured from the top of the rails, running along the edge of the tank farm, inside a link chain fence surrounding the property. There are two yard lights inside the property, each on a pole 23 feet, six inches high, both north of the tanks.

North of the tracks and west of Curtis Road is a building of the American Oil Company. Beyond the building are some storage tanks. Morris Hill Road intersects Curtis Road about 100 feet north of the spur tracks. It also intersects the branch line 307 feet to the east, Curtis, Morris Hill, and the railroad thus forming a small triangular tract. This tract is clear except for a billboard.

At the time of the accident a cross buck with "Railroad Crossing" written on both sides was located on the west side of Curtis Road, north of the spur track. There was no sign or warning device of any kind on the east side of Curtis Road or south of the tracks. At the intersection of Morris Hill Road signs were placed on each side of the spur track.

Other than the dirt dike and link chain fence a driver traveling north on Curtis has an unobstructed view to the right from 268 feet south of the railroad crossing. Daylight pictures taken from this distance, and introduced into evidence show the cross buck warning signs at the

1. The supervisor of Operation Statistics for the Idaho State Highway Department described Curtis Road as "one of the heavier used roads".

2. Although appellant's brief refers to the drinking, it is not argued that this was a contributing cause of the accident.

3. Hormaechea testified it was misty and that he turned the windshield wipers on due to the mist. Clinton Stevens, the engineer of the Union Pacific train testified that the rails and ties were frosty.

Morris Hill Road crossing, 307 feet east of the Curtis Road crossing. This view expands as the driver approaches the crossing.

Hormaechea testified that he did not remember anything after turning into Curtis Road. There was no other traffic on the road and no witnesses to the accident other than the engine crew on the train.

Fireman Parker was operating the train at the time of the collision. As the train approached the Morris Hill Road Parker sounded the whistle and turned on the automatic bell. Because Morris Hill and Curtis Road are so close together, the fireman followed the usual practice in whistling for both crossings at the same time. Both Parker and engineer Stevens testified that the headlights and ground lights of the train were on. Both estimated the train's speed at 20 miles per hour as it approached the crossing.[4]

Stevens testified that he observed the Hormaechea car traveling north on Curtis Road when the car was about 400 feet down the road and the train was about 200 feet from the crossing. He kept watching the car and when it did not slow down as it neared the crossing he told Parker to put the brakes in emergency. At this time the train was 40 to 50 feet and the car approximately 100 feet from the point of collision. It takes about three seconds for the emergency brake to reach full braking pressure. The brakes were in effect at approximately the time the collision occurred. The train continued down the track 596 feet, pushing the automobile, part of which was dragging on the ground. The point of impact determined by dirt and debris on the highway, was approximately four feet east of the center stripe (in the northbound lane) of Curtis Road. There were no skid marks on the highway.

Bert Wilson, a detective of the Ada County Sheriff's Office,[5] made an investigation of the accident, arriving about ten minutes after the accident occurred. He testified that there had been a slight fog and it was cloudy. In Wilson's opinion the crossing was poorly lighted. He testified that the tank farm made it hard to see a train approaching from the east and that the wire fence "sort of obstructs your vision to a certain extent". Wilson had passed over the crossing "a lot of times at night". In his opinion a person approaching from the south "might mistake the headlight of an engine on the track for this light that is on top of that tall pole * * *. The angle that this train would be approaching wouldn't be crossing directly at the light. You would see the reflection". In his "estimation" the "switch engines and lights are a little bit dim".

Wilson testified further that in the daylight it would be possible to see the cross buck sign, but that after dark, even with the lights properly adjusted according to law, "it would be pretty hard to see".[6]

4. The engine did not have a speedometer or other speed recording device.

5. Wilson had been employed by Ada County for about four years, in the capacity of a detective for a year and a half. Prior thereto he had been with the Idaho State Police for six years engaged in patrolling highways and accident investigation.

6. On cross-examination Wilson testified in part:
"Q Is there anything that would prevent a driver approaching from the south at that time whose lights were on from seeing the crossbuck sign you mentioned that was there on the west side of the road as he approaches going north from the south?
" * * *
"A It would depend on the angle of your lights. If you had lights that went out to the left, you could pick it up and if you didn't—a lot of vehicles, their lights would pick it up. It would depend on how they are adjusted.
"Q Let's say a vehicle with lights that were properly adjusted according to the law?
."A It would be pretty hard for them to see.
"Q From how far back all the way from Bethel Road, which I think you

Numerous pictures of the scene of the accident taken in the daylight by Wilson and a claim agent of Union Pacific were received in evidence. No pictures were taken by either of them to show night-time conditions.[7] Wilson was the only witness who testified to what could be observed in the nighttime by a motorist approaching from the south.

Appellant argues that Wilson's testimony is incredible in the light of photographs, engineering maps, and un-contradicted testimony relative to meas-urements, and that "much of his testi-mony can be ignored because of confu-sion on his part relative to the physical facts referred to in much of the ques-tioning * * *."[8] It is difficult to reconcile some of Wilson's testimony with the pictures taken in daylight, but in the absence of nighttime pictures and any contradictory evidence, we cannot disregard entirely the testimony of an experienced investigating officer who had observed nighttime conditions on many occasions.[9]

Under Idaho law it is not within the province of the court "to set aside a ver-dict unless it can be said that there is no conflict in the inferences, probabilities and conclusions to be derived from the evidence as to the negligence * * *" of the appellant and contributory negli-gence of the appellees. "Where different minds might draw different inferences or conclusions from the facts, whether controverted or not, the issue is one for the jury alone." Questions of negligence and contributory negligence "are gener-ally for the jury and not for the court". Van v. Union Pacific Railroad Company, 1961, 83 Idaho 539, 366 P.2d 837, 840.

Both the traveler and railroad company are charged as a matter of law with notice that railroad crossings are places of danger, and have "equal and like rights and * * * like responsi-bilities" to avoid accidents. Fleenor v. Oregon Short Line R. R. Co., 1909, 16 Idaho 781, 102 P. 897, 902; Van v. Un-ion Pacific Railroad Company, supra.

The Idaho law relative to the duty of a railroad company to maintain ade-quate warnings is stated in Whiffin v. Union Pacific R. Co., 1938, 60 Idaho 141, 89 P.2d 540, 546, 547, as follows:

"The railroad company must make the approach of its trains at crossings known by appropriate means so that the traveler by looking and listening, and stopping so to do when required by statute or otherwise necessary, be-fore crossing the tracks may be able to discover, while in a place of safety, the approach of trains.

"* * * the railroad company must provide such warnings and safeguards as the relative situations of the tracks and highways and crossings, and the extent of its use, as a reasonably pru-dent person would demand as proper precautions for the protection of the traveling public, and a failure to do so constitutes negligence."

Under the evidence presented the jury could properly find that the one cross buck warning sign northwest of the

---

said was about 400 feet—maybe you didn't say that—anyway from Bethel Road up to the crossing, would you say your lights wouldn't shine on both sides of the road?

"A It would be pretty hard for them on bright or dim. If you were driving with your lights on dim, I don't believe you could see it."

7. The claim agent testified that he could have taken night pictures with his camera.

8. It is true there was some confusion with reference to which cross buck sign was the subject of Wilson's testimony, but

this was not entirely the fault of the wit-ness and was later clarified.

9. Appellant argues in particular that the 18 inch dirt dike and chainlink fence could not possibly have obstructed the view of a traveler on Curtis Road. The top of the dike measured 18 inches above the rails and the fence three and one-half to four feet above Curtis Road. It ap-pears from some of the pictures that the dike in places was almost as high as the fence. It may well be that the dike at least would obstruct the view of the ground lights on the engine.

crossing would not afford an adequate warning to a motorist approaching from the south, and that appellant's negligence in failing to provide an adequate warning was a proximate cause of the collision.

A closer question is presented by appellant's contention that Hormaechea was guilty of contributory negligence as a matter of law; but we conclude that under Idaho law the evidence was sufficient to present a jury question.

In determining the issue of contributory negligence, "due care or ordinary prudence under the circumstances is the only test" and "the conditions, circumstances and surroundings at the time of the accident" must be considered. Stowers v. Union Pacific R. Co., 1951, 72 Idaho 87, 237 P.2d 1041, 1047. In applying this rule to a motorist approaching a railroad crossing in darkness, the court said in part:

"Where at the time the traveler was injured on a railroad crossing it was night or so dark it was possible that although he looked he could not have seen the approaching train, it could not be said as a matter of law from the physical facts that he did not look when he testified he looked and saw no train. * * * The rule which charges the traveler with seeing what he could have seen if he had looked, and with hearing what he could have heard if he had listened, is without application, where it cannot be said as a matter of law that the traveler is presumed to have seen the locomotive where the vision or hearing is impaired by darkness, in itself an obstruction; in such instances the question of contributory negligence cannot properly be withdrawn from the jury. (Citing cases)" 237 P.2d 1047, 1048.[10]

It is true, as appellant argues, that section 49–747 of the Idaho Code requires a motorist approaching a railroad crossing to stop within 50 but not less than 15 feet from the nearest rail of the railroad where "(a)n approaching railroad train is plainly visible and is in hazardous proximity to such crossing". Section 49–701 provides that no person shall drive a vehicle on a highway "at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing", and that he shall "drive at an appropriate reduced speed when approaching and crossing an intersection or railroad grade crossing * * *".

Defense of contributory negligence as a matter of law in a crossing accident was last considered by the Supreme Court of Idaho in Van v. Union Pacific R. Co., supra.[11] In that case the plaintiff was approaching a five track crossing with a yellow flashing light about 15 feet above the roadway. On a clear dark night plaintiff's car struck the ninth car of a slow moving freight train which occupied the crossing. The car left 100 feet of skid marks.[12] Recognizing the statutory rules set forth in section 49–747, supra, the court stated that it was "dealing with

---

10. While we consider the general rule quoted to be applicable, Stowers is factually distinguishable in that it was there assumed, upon conflicting evidence, that the headlights on the train were not burning and the customary warning signals were not given.

11. Appellant refers to Van as a "questionable 3–2 decision" which "has been ignored by courts in other jurisdictions and in Idaho has been cited only four times on points other than those involved in this appeal." Nevertheless, it is the most recent statement of Idaho law cited by either party.

12. Additional facts set forth in the dissenting opinion indicate that for at least one-half mile from the crossing the road was straight, level, and without obstruction to the motorist's view. Plaintiff in that case was familiar with the crossing and on prior occasions had seen the flashing light.

an accident occurring at a crossing occupied by a train, and a crossing not 'plainly visible' ".[13] The court concluded that under all of the facts it could not say that the jury was wrong in determining that the motorist was not guilty of contributory negligence.[14]

If anything, the facts in the instant case are more favorable to the motorist than in the Van case. In particular, here there was no flashing light above the roadway and no warning whatever on the side of the highway on which Hormaechea was traveling. In addition, the weather was misty and cloudy. As noted supra, Hormaechea testified that he turned on his windshield wipers and Wilson testified that there had been a slight fog. These conditions add credence to Wilson's testimony that in the nighttime "it was sometimes very difficult to see a train coming from the east to the west." [15] We conclude that there was evidence from which the jury could find that the approaching train was not "plainly visible" to Hormaechea as he approached the crossing.[16]

Under the holding in Van v. Union Pacific R. R. Co., supra, we can not say that Hormaechea was guilty of contributory negligence as a matter of law.

Judgment affirmed.

13. Distinguishing on this basis Ralph v. Union Pacific Railroad Company, 1960, 82 Idaho 240, 351 P.2d 464, upon which appellant heavily relies in this case. The court pointed out further that in Ralph the "court observed that (the) crossing was on a flat terrain, and unobstructed view, and one could, if using his senses, discern for at least a mile the approach of a train to the crossing". There were also "four reflectorized railroad signs" to warn approaching motorists, including cross buck signs on both sides of the road near the crossing.

14. Other recent Idaho cases following the rule in Stowers and Van that the issue of contributory negligence is ordinarily for the jury include Nagel v. Hammond, 1965, 90 Idaho 96, 408 P.2d 468, and Loosli v. Bollinger, 1966, 90 Idaho 464,

413 P.2d 684. Both of these cases involved collisions between motor vehicles at intersections where the defendant contended that plaintiff was guilty of contributory negligence for failure to observe an approaching vehicle which he could had seen had he kept a proper lookout.

15. It may be noted also that the locomotive was in a backup position, with headlights, which the train crew testified were on bright, but in this position, there was no oscillating light.

16. The jury was carefully and fully instructed on the issue of contributory negligence, particularly with reference to the duty of a motorist approaching a railroad crossing.